Franklin B. FICARRA and Alfred Dennis Grayson, Plaintiffs–Appellants,

v.

DEPARTMENT OF REGULATORY AGENCIES, DIVISION OF INSURANCE; and Joanne Hill, Commissioner of Insurance, Defendants–Appellees.

Joseph James WILKINS, Plaintiff–Appellant,

v.

DEPARTMENT OF REGULATORY AGENCIES, DIVISION OF INSURANCE; and Joanne Hill, Commissioner of Insurance, Defendants–Appellees.

Nos. 91SA276, 91SA300.

Supreme Court of Colorado, En Banc.

March 22, 1993.

Gerash, Robinson & Miranda, P.C., Todd J. Thompson, Denver, for plaintiffs-appellants Ficarro and Grayson.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Merrill Shields, Deputy Atty. Gen., Richard Djokic, First Asst. Atty. Gen., Robert M. Howard, Sr. Asst. Atty. Gen., Denver, for defendants-appellees.

Cherner and Blackman, Barbara S. Blackman, Denver, for plaintiff-appellant Wilkins.

Justice LOHR delivered the Opinion of the Court.

In affirming two final agency orders of the Colorado Division of Insurance (the Division), the District Court for the City and County of Denver held that the Division had correctly construed as applying retroactively certain provisions of An Act Concerning the Regulation of the Bail Bond Business, ch. 80, secs. 1–13, 1988 Colo.Sess. Laws 480, 480–84 (the Act), and that the Division's decision not to renew the professional bail bondsman licenses of the plaintiffs [1] did not constitute an unconstitutional

---

**1.** The plaintiffs in the complaint for judicial review were Alfred Dennis Grayson, Frank Fi-

retrospective operation of the Act under Article II, Section 11, of the Constitution of the State of Colorado. We affirm.

## I

The Act, which became effective on July 1, 1988, amended Colorado's previously existing professional bail bondsman licensing provisions. Prior to the Act, the plaintiffs applied for and were issued by the Division professional bail bondsman licenses. When they applied for their licenses, each applicant was required to "satisfy the [D]ivision of his good moral character by furnishing references thereof," § 12–7–103(2), 5A C.R.S. (1991); ch. 200, sec. 3, § 72–20–3(2), 1971 Colo.Sess.Laws 726, 727, and to set forth under oath whether he had been convicted of a felony during the previous ten years, § 12–7–103(1)(c), 5A C.R.S. (1991); ch. 163, sec. 1, § 72–22–3(1)(c), 1963 Colo. Sess.Laws 584, 586. The Division had the authority to refuse to issue a license to an applicant if the applicant had been convicted of a felony during the previous ten years. § 12–7–102(2), 5 C.R.S. (1985); ch. 151, sec. 38, § 72–20–2(2), 1973 Colo.Sess. Laws 513, 522. However, section 12–7–102(2) also stated that "when considering whether a license should be issued notwithstanding a felony conviction ... the department shall be governed by the provisions of section 24–5–101, [10] C.R.S. [ (1982) (the Ex–Offenders' Rights Act) ]." The Ex–Offenders' Rights Act provided (and still provides) that an applicant's prior felony conviction shall not in and of itself disqualify an applicant "from applying for and receiving a license ... required by the laws of this state to follow any business, occupation, or profession," § 24–5–101, 10A C.R.S. (1988), and that a prior felony conviction, "and pertinent circumstances connected with such conviction, shall be given consideration in determining whether, in fact, the applicant is a person of good moral character at the time of the application," *id.*

In accordance with these provisions, the Division issued professional bail bondsman licenses to Ficarra and Wilkins, despite the fact that each had been convicted of a felony within the previous ten years. Grayson, who as far as the record shows had not been convicted of a felony within the previous ten years of the date of his original application, also received a license from the Division.[2]

Under Colorado's bail bondsman licensing statute as it existed before the effective date of the Act, *see* ch. 163, sec. 1, § 72–22–2(4), 1963 Colo.Sess.Laws 584, 585, and as it still exists today, *see* § 12–7–102(4), 5A C.R.S. (1991), all bail bondsman licenses expire annually on January 31. Consequently, in order to remain a licensed professional bail bondsman, a current licensee must apply annually for a renewal of his license. Ficarra's and Grayson's licenses were renewed annually until the Division notified them by letters dated January 9, 1989, that their applications for renewal were being denied. Wilkins' license was renewed annually until the Division notified him by letter dated January 3, 1990, that his application for renewal was being denied. The letters explained to each that under the Act his application for renewal had to be denied because he had been convicted of a felony within the previous ten years, or had served a sentence or had been on parole or probation in connection therewith within the previous ten years.[3] The letters also explained to each that before the nonrenewal could take effect he was

carra, Duane Chapman, and David Frisco. Chapman and Frisco were subsequently dismissed by the district court on the ground of mootness, while Joseph James Wilkins filed a separate complaint for judicial review and was granted permission to "intervene" on the side of the plaintiffs. The plaintiffs-appellants who are now before this court are Ficarra, Grayson, and Wilkins, and we refer to them as the plaintiffs.

2. Grayson did sustain a felony conviction on June 20, 1988, after obtaining his license and just prior to the effective date of the Act.

3. Grayson was first licensed in 1984 and Ficarra in 1987 according to allegations in their complaint. Wilkins was first licensed in 1988. The record does not explain why Wilkins' license was renewed for 1989, subsequent to the effective date of the Act, notwithstanding that he had been convicted of a felony in 1984.

entitled to a hearing, and that he was receiving a new license pending that hearing.

The Act amended the previously existing bail bondsman licensing statute by deleting provisions that stated that the Division *"may* refuse to issue a license" if the applicant has been convicted of a felony within the previous ten years, and that the Division shall apply the Ex–Offenders' Rights Act in determining whether to issue a license despite a felony conviction. *See* ch. 80, sec. 1, § 12–7–102(2), 1988 Colo.Sess. Laws 480 (emphasis added). In place of these provisions, the Act inserted the requirements that "[e]very applicant *shall* provide satisfactory evidence to the commissioner that he ... has not been convicted of a felony ... within the last ten years ... [and h]as not served a sentence upon a conviction of a felony ... in a correctional facility ... or under the supervision of the division of parole or any probation department within the last ten years." *Id.* at 480–81 (emphasis added).

The Act also amended previously existing section 12–7–106(1). Section 12–7–106(1) had provided that the Division *"may* deny, suspend, revoke, or refuse to renew, as may be appropriate," *id.,* sec. 5, § 12–7–106(1), at 482 (emphasis added), the license of any person engaged in the business of professional bondsman for a variety of explicit reasons that did not include conviction of a felony, or service of a sentence in connection therewith, within the last ten years. *See* § 12–7–106(1), 5 C.R.S. (1985). As amended by the Act, section 12–7–106(1) provided that the Division *"shall* deny, suspend, revoke, or refuse to renew, as may be appropriate," ch. 80, sec. 5, § 12–7–106(1), 1988 Colo.Sess.Laws 480, 482 (emphasis added), the license of any person engaged in the business of professional bondsman who had been "[c]onvict[ed] of a felony within the last ten years," *id.* § 12–

7–106(1)(i), or who had "[s]erv[ed] ... a sentence upon a conviction of a felony ... within the last ten years," *id.* § 12–7–106(1)(j).

In a consolidated proceeding before the Division, Grayson and Ficarra challenged the Division's decision not to renew their licenses. They argued that the Division had misinterpreted the Act, that when properly interpreted the Act applied prospectively, and that even if the General Assembly had intended that the Act apply retroactively, a retroactive application would violate the prohibition against retrospective legislation contained in Article II, Section 11, of the Colorado Constitution.[4] They also argued that despite the fact that the Act deleted the provision that the Division shall be governed by the Ex–Offenders' Rights Act, the Ex–Offenders' Rights Act still applied under the Act.

In her initial decision dated October 17, 1989, the Administrative Law Judge (ALJ) held that "the deletion of the reference to the Ex–Offender's [sic] Rights Act in Section 12–7–102(2) constitutes an affirmative indication that its provisions no longer apply to bail bondsmen licensing decisions." She further held that "the new mandatory language of Section 12–7–102(2), C.R.S. (1988) [i.e., that applicants *shall* provide evidence that they have not been convicted of a felony or served a sentence thereupon within the last ten years] and the complete deletion of any reference to [the Ex–Offenders' Rights Act] leave no doubt that the legislature in 1988 intended [by the Act] ... to effectuate an absolute bar to licensure for ... recently convicted felons," and that in light of that intent, "[t]he only appropriate sanction under [amended] Section 12–7–106 for a licensee who is a recently convicted felon is mandatory revocation [as opposed to suspension]."[5] Finally, ap-

---

**4.** Art. II, § 11, of the Colorado Constitution provides:

No ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges, franchises or immunities, shall be passed by the general assembly.

**5.** The ALJ stated her holding in terms of mandatory revocation, instead of mandatory nonrenewal, because following the Division's decision not to renew Ficarra's and Grayson's licenses, the Division issued them new licenses pending the outcome of a hearing to which they were entitled before their nonrenewals could take effect. *See* § 12–7–106(2), 5A C.R.S. (1991) ("If the [D]ivision denies, suspends, revokes, or re-

plying the rule that a law is unconstitutionally retrospective if it impairs vested rights acquired under existing laws, the ALJ held that because Grayson and Ficarra had no vested rights "to have their criminal convictions treated in a particular way by the state licensing authority," the Division's application of the Act to them did not constitute an unconstitutional retrospective operation of the law.

Grayson and Ficarra filed exceptions to the ALJ's initial decision and by final agency order dated February 10, 1990, the Division affirmed the ALJ's initial decision, denied Grayson's and Ficarra's requests for stays of enforcement, and ordered that their licenses be revoked ten days hence. Grayson and Ficarra then filed in Denver district court a complaint for judicial review of the Division's final order, and a motion for an order staying the Division's revocation of their licenses pending judicial review. The district court granted the stay.

Meanwhile, on March 13, 1990, the Division held a hearing on the issue of the revocation of Wilkins' license. On May 29, 1990, the ALJ (the same ALJ who earlier had presided over Grayson's and Ficarra's proceeding) issued her initial decision in Wilkins' case, and for the same reasons that she had previously revoked Grayson's and Ficarra's licenses, she revoked Wilkins' as well. Wilkins filed exceptions to the ALJ's initial decision, and on October 16, 1990, the Division issued its final agency order affirming the ALJ's decision and ordering that Wilkins' license be revoked ten days hence. Wilkins then filed in Denver district court a complaint for judicial review including a motion for an order staying the revocation of his license, and a

motion to intervene in the then pending case of Grayson and Ficarra. The district court granted Wilkins' motions for a stay and to intervene.[6]

The district court issued its final order in the matter on June 25, 1991. It held that the Division had properly construed the Act, that the Division's application thereof did not impair any vested rights of the plaintiffs, and that therefore the revocation of their licenses did not constitute an unconstitutional retrospective operation of the law. The plaintiffs filed notices of intent to seek appellate review and motions for stays pending appeal.[7] The district court granted the plaintiffs' motions for stays pending appeal, and the plaintiffs filed notices of appeal in this court.[8]

The parties in the Grayson and Ficarra proceeding have stipulated that

[e]ach of the [plaintiffs] has relied upon his professional bails [sic] bondsmen and insurance agent licenses, and the expectation that they would continue to practice as licensed professional bail bondsmen, to the following extent: the predominant means of sustenance and support for each is the income he earns as a professional bail bondsman; each has established a business by his personal investment of capital; each [plaintiff] has established goodwill in the bailbondsman business that he owns; each [plaintiff] has mortgaged real and/or personal property, for the investment of capital into the business; each has posted a $50,000 qualification bond with the Division of Insurance, and remains personally liable to the insurance company which posted the bond on behalf of each [plaintiff]; and each [plaintiff] has purchased office

fuses to renew any such license, the aggrieved person shall be given an opportunity for a hearing subject to judicial review as provided in article 4 of title 24, C.R.S.").

**6.** It may be questioned whether judicial proceedings for review of separate final agency orders may properly be consolidated by "intervention" under C.R.C.P. 24. This issue was not raised in the district court, and we do not address it.

**7.** The district court's order does not mention Wilkins either in the caption or internally. The

parties, however, have treated the order as applicable to Wilkins and so do we. Although the court issued a single order on the merits of the case, Wilkins pursued an appeal separate from that of Grayson and Ficarra.

**8.** Our jurisdiction over this appeal from a final order of the district court is predicated on § 13–4–102(1)(b), 6A C.R.S. (1987), § 24–4–106(9), 10A C.R.S. (1988), C.A.R. 1(a)(1), and C.A.R. 3(f).

equipment and hired employees in connection with his bailbondsman business. The parties in that proceeding also stipulated that "[t]he professional bail bondsmen licenses of each [plaintiff] have been renewed annually since they were issued. The Division's filing of these actions was prompted by the passage of [the Act] and not by the existence of new conduct on the part of the [plaintiffs]."

The Wilkins proceeding does not contain comparable stipulations, but the ALJ included the following finding in her initial decision:

> At the time [Wilkins] originally applied for licensure as a bailbondsman, he had his own janitorial service, which he then gave up in order to devote himself to employment as a bailbondsman. [Wilkins] is currently employed as a bailbondsman and derives his primary income from this pursuit.

We hold that the Division's decision not to renew the plaintiffs' licenses solely on the basis that each had been convicted of a felony or served a sentence thereupon prior to the effective date of the Act constitutes a retroactive application of the Act. *See infra* part II A. However, the plain language of the Act manifests a clear legislative intent that the Act be applied in this manner, and this language is sufficient to overcome the statutory and common law presumption that statutes are to be applied prospectively. *See infra* part II B. Furthermore, the Division's nonrenewal of the plaintiffs' licenses impairs no vested rights of the plaintiffs, and is not an unconstitutional retrospective application of the Act. *See infra* part III.

## II

■■■ Legislation can be applied "prospectively," "retroactively," or "retrospectively." Legislation is applied prospectively when it operates on transactions that occur after its effective date, and retroactively when it operates on transactions that have already occurred or rights and obligations that existed before its effective date. *See* 2 Norman J. Singer, *Sutherland Statutory Construction* § 41.01, at 337 (4th ed. 1986) (2 Singer). Often it is difficult absolutely to characterize a statute as either prospective or retroactive because even if a statute directly affects only transactions that occur after its effective date, it may indirectly, and not insignificantly, affect transactions that occurred before its effective date. In addition, although the retroactive application of a statute is generally disfavored by the common law,[9] and by statute, *see* § 2–4–202, 1B C.R.S. (1980) ("A statute is presumed to be prospective in its operation."), the retroactive application of a civil statute [10] is not necessarily unconstitutional. *E.g. People v. D.K.B.,* 843 P.2d 1326, 1332 (Colo.1993) (a statute is not unconstitutional merely because the facts upon which it operates occurred before the adoption of the statute); *Colorado Dep't of Social Servs. v. Smith, Harst & Assocs.,* 803 P.2d 964, 966 (Colo.1991)

**9.** *E.g., Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Seddon v. Harpster,* 403 So.2d 409, 411 (Fla.1981) ("The presumption is against retroactive application in the absence of an express manifestation of legislative intent to the contrary."); *Bell v. State,* 236 Md. 356, 204 A.2d 54, 61 (1964) ("The general presumption is that all statutes, State and federal, are intended to operate prospectively and the presumption is found to have been rebutted only if there are clear expressions in the statute to the contrary."); *Kopczynski v. Camden County,* 2 N.J. 419, 66 A.2d 882, 884 (1949) ("A cardinal rule in the interpretation of statutes is that words in a statute ought not to have a retrospective opera-

tion unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intent of the legislature cannot otherwise be satisfied."); *Earle v. Froedtert Grain & Malting Co.,* 197 Wash. 341, 85 P.2d 264, 265 (1938) ("It is a fundamental rule of statutory construction that a statute is presumed to operate prospectively and ought not to be construed to operate retrospectively in the absence of language clearly indicating such a legislative intent.").

**10.** The constitutionality of the retroactive application of a criminal statute is governed by the ex post facto clauses of the United States Constitution, art. I, § 10, cl. 1, and the Colorado Constitution, art. II, § 11. *See generally People v. District Court,* 834 P.2d 181 (Colo.1992).

(same); *Continental Title Co. v. District Court*, 645 P.2d 1310, 1314–15 (Colo.1982) (same). Otherwise stated, under our state constitution, some retroactively applied civil legislation is constitutional, and some is not, and it is helpful to mark this distinction by using the term *retrospective* to apply only to legislation whose retroactive effect violates the constitutional prohibition. *Cf.* Colo. Const. art. II, § 11 ("No ... law ... *retrospective* in its operation ... shall be passed by the general assembly.") (emphasis added).[11] In jurisdictions unlike Colorado where there are no constitutional prohibitions against the retrospective operation of the law, there is little or no reason to use different terms in order to distinguish between a constitutional and unconstitutional, non-prospective operation of a civil statute,[12] and the terms "retrospective" and "retroactive" are often employed interchangeably. *Cf.* 2 Singer, § 41.01, at 337 ("The terms 'retroactive' and 'retrospective' are synonymous in judicial usage and may be employed interchangeably.").[13] We, however, will attempt to abide by the convention that legislation that is retroactive in its application is not necessarily unconstitutional, whereas legislation that is also retrospective in its application is unconstitutional. Accordingly, in deciding whether the Act has been properly applied, we must decide whether the Division has applied the Act retroactively, *see infra* part II A, and if so, whether this was appropriate in light of our statutory and common law presumption that favors the prospective application of statutes, *see infra* part II B. Thereafter, having determined that the Division has applied the Act retroactively and that this was appropriate even in light of the presumption favoring prospectivity, we address whether the Divi-

sion's application of the Act was also retrospective. *See infra* part III.

## A

■ The Division argues in its brief that its application of the Act to the plaintiffs is merely prospective because it applies "only to the [plaintiffs'] conduct as bailbondsmen after passage of the [Act]." On the contrary, however, we agree with the ALJ that, as applied to the plaintiffs,

> the import of [the Act] is not merely to regulate future bail bondsmen activities but to affect the criminal convictions which have already occurred. The application of [the Act to the plaintiffs] thus affects past conduct and cannot be characterized as merely prospective in its application.

In other words, the Division's application of the Act to the plaintiffs ascribes to certain transactions that occurred before the effective date of the Act different legal effects from that which they had under the law when they occurred. Specifically, the Division's application of the Act to the plaintiffs ascribes to the commission by the plaintiffs of certain crimes the legal effect of automatically disqualifying them from having their professional bail bondsman licenses renewed when under the law that was in effect when these crimes were committed the legal effect thereof was not automatically to disqualify the plaintiffs from having their licenses renewed, or originally granted, as the case may be. In this sense, the Division's application of the Act directly operates on transactions that have already occurred before the effective date of the Act, and such an application is therefore a retroactive, rather than merely pro-

**11.** The United States Constitution contains no textual counterpart to the Colorado Constitution's prohibition against retrospective legislation. *See generally* 2 Singer § 41.03, at 343–44.

**12.** At least seven other states have express constitutional prohibitions similar to our own prohibition against the retrospective operation of the law. *See* Ga. Const. art. I, § 1, ¶ 10; Idaho Const. art. XI, § 12; Mo. Const. art. I, § 13; N.H. Const. pt. I, art. 23; Ohio Const. art. II, § 28; Tenn. Const. art. I, § 20; Tex. Const. art.

I, § 16. *See generally* 2 Singer § 41.03, at 344 n. 9.

**13.** This court has sometimes employed the terms "retroactive" and "retrospective" interchangeably, relying on the context to indicate whether constitutional issues are implicated. *E.g., Smith, Harst & Assocs.*, 803 P.2d at 966; *Continental Title*, 645 P.2d at 1314, 1315; *Taylor v. PERA*, 189 Colo. 486, 488 n. 2, 542 P.2d 383, 385 n. 2 (1975).

spective, application of the Act. *See* 2 Singer, § 41.01, at 337.

### B

In Colorado, "[l]egislation is presumed to have prospective effect unless a contrary intent is expressed by the General Assembly." *Riley v. People,* 828 P.2d 254, 257 (Colo.1992); *accord People v. Fagerholm,* 768 P.2d 689, 692 (Colo.1989) ("legislation may be given retroactive effect if the statute indicates a clear legislative intent to achieve such ... application" and if such application does not impair vested rights); *McCowan v. Equitable Life Assurance Soc'y of the United States,* 116 Colo. 78, 81, 179 P.2d 275, 277 (1947) ("The courts have universally construed all legislation as prospective only, unless by plain and positive language it otherwise appears ... and this is true even when applied to statutes which are remedial only."); *see* § 2–4–202, 1B C.R.S. (1980) ("A statute is presumed to be prospective in its operation."); *Adams County Sch. Dist. No. 1 v. District Court,* 199 Colo. 284, 287, 611 P.2d 963, 964 (1980) ("Section 2–4–202, C.R.S.1973, which is a restatement of the common law, provides that a statute is presumed to be prospective in its operation.").

In this case the intent of the General Assembly with regard to the effect of felony convictions that occurred prior to the effective date of the Act is unmistakable. First, the General Assembly did not alter the provision of the licensing statute that states that "[e]ach license issued under this article shall expire annually on January 31...." *See* § 12–7–102(4), 5 C.R.S. (1985); ch. 80, sec. 1, § 12–7–102, 1988 Colo.Sess. Laws 480, 480–81; *cf. City and County of Denver v. Rinker,* 148 Colo. 441, 446, 366 P.2d 548, 550 (1961) ("there is a presumption that all laws are passed with knowledge of those already existing"). Second, the General Assembly specifically deleted the provisions stating that the Division is to be governed by the Ex–Offenders' Rights Act and that it may issue a license to an applicant notwithstanding his prior felony conviction, retained the provision stating that "[n]o license shall be issued except in compliance with this article," and

added the requirement that "every applicant shall provide satisfactory evidence ... that he ... has not been convicted of a felony ... within the last ten years ... [and h]as not served a sentence upon a conviction of a felony ... within the last ten years." Ch. 80, sec. 1, § 12–7–102(2), 1988 Colo.Sess.Laws 480, 480–81. Finally, the General Assembly revised section 12–7–106(1) by deleting "may" and substituting "shall" so that it provides that "[t]he [D]ivision *shall* deny, suspend, revoke, or refuse to renew, as may be appropriate, the license of any person engaged in the business of professional bondsman for any of the following reasons: (i) Conviction of a felony within the last ten years ...; (j) Service of a sentence upon a conviction of a felony ... within the last ten years." *Id.* sec. 5, § 12–7–106(1), at 482. The intent on the part of the General Assembly to exclude from the ranks of professional bail bondsmen anyone who has been convicted of a felony or who has served a sentence thereupon within ten years from the date of his application for renewal is plain.

Faced with this unmistakable intent, the plaintiffs rely on three arguments, none of which is persuasive. First, the plaintiffs argue in their brief that Colorado precedent establishes that "legislation is not to be given a retroactive application, unless the legislature expressly so states." As authority for this proposition, the plaintiffs rely on *People v. Holland,* 708 P.2d 119 (Colo.1985), and *Boulder Medical Ctr. v. Moore,* 651 P.2d 464 (Colo.App.1982).

In *Holland,* the issue was the application of amended criminal statutes of limitations that extended the periods of limitation. We held that the General Assembly's subsequent and explicit legislative declaration that the amendment in question was to apply retroactively "provided persuasive evidence of the intent underlying the amendment," *Holland,* 708 P.2d at 120, and that such an indication of legislative intent was "sufficient," *id.* at 121, to overcome the dual presumptions that "statutes are prospective in operation, section 2–4–202, 1B C.R.S. (1980), and that criminal statutes of limitations are to be construed

liberally in favor of the accused." *Id.* at 120. *Holland* is therefore questionable authority even for the proposition that an express legislative declaration is necessary to overcome the dual presumptions implicated in that case, much less convincing authority for the plaintiffs' proposition that an express legislative declaration is necessary to overcome the single presumption of prospectivity implicated in this case.

To be sure, some jurisdictions have apparently adopted the rule that "without an express statutory provision stating that an act is to have retroactive effect, it can only be applied prospectively." *Mulligan v. Joliet Regional Port Dist.,* 123 Ill.2d 303, 123 Ill.Dec. 489, 498, 527 N.E.2d 1264, 1273 (1988); *accord Seddon v. Harpster,* 403 So.2d 409, 411 (Fla.1981). However, in numerous cases concerning the presumption that statutes operate prospectively, this court has never once held that only an express contrary declaration by the General Assembly is sufficient to overcome the presumption that statutes are prospective in operation. *See Riley,* 828 P.2d 254; *Fagerholm,* 768 P.2d 689; *Holland,* 708 P.2d 119; *Adams County Sch. Dist. No. 1,* 199 Colo. 284, 611 P.2d 963; *McCowan,* 116 Colo. 78, 179 P.2d 275; *Curtis v. McCall,* 79 Colo. 122, 244 P. 70 (1926); *Denver, S. Park & Pac. Ry. v. Woodward,* 4 Colo. 162 (1878). The court of appeals in *Boulder Medical Ctr.,* upon which the plaintiffs also rely, did state that retroactive application of a statute "is forbidden in the absence of plain language." *Boulder Medical Ctr.,* 651 P.2d at 466. We do not understand this as anything more than an expression that clear legislative intent must appear from the statute in order to overcome the presumption that legislation is presumed to have a prospective effect. We have never held that express language of retroactive application is necessary to express such intent. Thus, the plaintiffs' argument that Colorado precedent establishes that legislation is not to be given retroactive application unless the legislature expressly so states is not persuasive.

Second, the plaintiffs argue that despite the fact that the Act specifically deleted the provision of the licensing statute that directed that the Division is to be governed by the Ex–Offenders' Rights Act, the Ex–Offenders' Rights Act must still be applied by the Division in determining whether to renew the plaintiffs' licenses. More specifically, the plaintiffs argue that to hold otherwise would violate the rule that a later statute (in this case the Act) should not be interpreted to repeal an earlier statute (in this case the Ex–Offenders' Rights Act) unless the intent to do so is clear and unmistakable. *See Casados v. People,* 119 Colo. 444, 448–49, 204 P.2d 557, 559 (1949) (to be effective, legislative intent to repeal a statute by implication must appear clearly, manifestly, and with cogent force). Contrary to the plaintiffs' argument, however, the intent of the General Assembly in deleting reference to the Ex–Offenders' Rights Act is clear and unmistakable. *See* 1A Singer § 23.12, at 355 (4th ed. 1985) ("When the amendatory act purports to set out the original ... section as amended, ... all matter that is omitted in the ... section ... is considered repealed."). Moreover, neither the Division nor this court is suggesting that the Act repeals the Ex–Offenders' Rights Act. Rather, the intent of the General Assembly as manifest in the Act is to preclude the application of the Ex–Offenders' Rights Act when the Division is making licensing decisions regarding applicants for bail bondsman licenses who have been convicted of a felony or served a sentence thereupon within the past ten years. When the Division is making licensing decisions regarding convicted felons who have *not* been convicted of a felony or served a sentence thereupon within the past ten years, there is nothing in the Act to suggest that the Ex–Offenders' Rights Act does not apply. In addition, the Act has no effect on the application of the Ex–Offenders' Rights Act outside the context of the bail bondsman licensing provisions.

■ Third, the plaintiffs argue that even if the Act does apply retroactively it was an error of law for the Division not to consider suspension of their licenses, rather than nonrenewal, because under the Act the statute provides that the Division

"shall deny, *suspend,* revoke, or refuse to renew, *as may be appropriate,* the license of any person engaged in the business of professional bondsman ... [who has been convicted] of a felony within the last ten years ... [or who has] serv[ed] ... a sentence upon a conviction of a felony ... within the last ten years." § 12–7–106(1), 5A C.R.S. (1991). On the contrary, however, suspension is an appropriate sanction only if a person is currently licensed. When a person's license expires, as do all bail bondsman licenses annually on January 31, § 12–7–102(4), 5A C.R.S. (1991), and the question is whether to renew it or not, it makes no sense to consider suspension as an alternative. Moreover, even if a person is currently licensed and the ultimate issue is whether to revoke his license because he sustained a felony conviction or served a sentence upon such a conviction within the past ten years, it would serve no purpose under section 12–7–106(1) to consider suspension as an alternative sanction unless sometime before the following January 31 it will have been more than ten years since he was convicted and served any sentence imposed upon that conviction. Otherwise, as soon as his suspension ended, he would have under the Act the identical status that required the Division to revoke or to suspend his license in the first place. Also, as soon as his license expired, the Division would be compelled to refuse to renew it under the provisions of sections 12–7–106(1)(i), (j) and 12–7–102(2)(d). Thus, it is clear that section 12–7–106 as amended by the Act contemplates suspension of a license as a possible alternative when a licensee has, for example, engaged in a dishonest, though relatively harmless practice in the conduct of his business, *see* § 12–7–106(1)(e), but not when proceedings are instigated as a result of the Division's decision not to renew a license because the applicant for renewal has incurred a felony conviction or has served a sentence upon such a conviction within the past ten years.

For the foregoing reasons, we hold that the Division correctly construed the intent of the General Assembly when the Division applied the Act retroactively to the plaintiffs, and declined to renew their licenses because they had been convicted of felonies or served sentences thereupon within the past ten years. We now turn to the issue of whether this retroactive application was also retrospective, and therefore unconstitutional, under Article II, Section 11, of the Colorado Constitution.

### III

#### A

■ The Colorado Constitution provides that "[n]o ... law ... retrospective in its operation ... shall be passed by the general assembly." Colo. Const. art. II, § 11. It is well settled that an act is deemed to be violative of this constitutional prohibition if it " '["]takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.["]' " *P–W Invs., Inc. v. City of Westminster,* 655 P.2d 1365, 1371 (Colo. 1982) (quoting *Denver, S. Park & Pac. Ry.,* 4 Colo. at 167 (quoting *Society for the Propagation of the Gospel v. Wheeler,* 22 F.Cas. 756, 767 (C.C.D.N.H.1814) (No. 13,-156))); *accord D.K.B.,* 843 P.2d at 1332; *Committee for Better Health Care for all Colo. Citizens v. Meyer,* 830 P.2d 884, 891 (Colo.1992); *Smith, Harst & Assocs.,* 803 P.2d at 966; *Van Sickle v. Boyes,* 797 P.2d 1267, 1270–71 (Colo.1990); *Qualls, Inc. v. Berryman,* 789 P.2d 1095, 1099 (Colo.1990); *Continental Title,* 645 P.2d at 1314; *Spiker v. City of Lakewood,* 198 Colo. 528, 532–33, 603 P.2d 130, 133 (1979); *Moore v. Chalmers-Galloway Live Stock Co.,* 90 Colo. 548, 554, 10 P.2d 950, 952 (1932). Consequently, a "vested right" has an "independent existence," *D.K.B.,* 843 P.2d at 1331, in the sense that once it vests it is no longer dependent for its assertion upon the common law or statute under which it may have been acquired. *Id.;* [14] 1A Singer § 23.34. In other words, the repeal of a

---

14. In *D.K.B.,* we reaffirmed and applied the rule that because there is no such thing as a vested right in remedies, the abolition of an old reme- dy does not constitute the impairment of a vested right. *Id.* at 1332.

statute or the abrogation of the common law from which a right may have originated does not erase that right if it is vested, but the right remains enforceable without regard to such repeal or abrogation. 1A Singer § 23.34.

Several other states with similar constitutional prohibitions against retrospective or retroactive legislation also rely on the so-called "Story definition," *see State ex rel. Matz v. Brown*, 37 Ohio St.3d 279, 525 N.E.2d 805, 807, 808 (1988), that an act that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective. *E.g., Todd v. Morgan*, 215 Ga. 220, 109 S.E.2d 803, 805 (1959); *Barbieri v. Morris*, 315 S.W.2d 711, 714 (Mo.1958); *Elliot v. Kesler*, 799 S.W.2d 97, 102 (Mo.App.1990); *Burrage v. New Hampshire Police Standards and Training Council*, 127 N.H. 742, 506 A.2d 342, 344 (1986).[15] We are therefore led in this case to consider whether any vested rights the plaintiffs acquired under existing laws were impaired by the application of the Act by the Division.[16]

It is commonly said that a vested right "must be something more than a mere expectation based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand, or a legal exemption from a demand made by another." *People ex rel. Eitel v. Lindheimer*, 371 Ill. 367, 21 N.E.2d 318, 321 (1939); *accord D.K.B.*, 843 P.2d at 1334 (Kirshbaum & Quinn, JJ., concurring);

*Manchester Envtl. Coalition v. Stockton*, 184 Conn. 51, 441 A.2d 68, 80 (1981); *Godfrey v. State*, 84 Wash.2d 959, 530 P.2d 630, 632 (1975); 2 Thomas M. Cooley, *Constitutional Limitations* 749 (8th ed. 1927);[17] *cf. Steinfeld v. Nielsen*, 15 Ariz. 424, 463–65, 139 P. 879, 896 (1914) ("A 'vested right' is ... an immediate fixed right to present or future enjoyment, or where the interest does not depend on a period, or an event, that is uncertain."); *Dunham Lumber Co. v. Gresz*, 71 N.D. 491, 2 N.W.2d 175, 179 (1942) (same); *cf. also Lillicrap v. Martin*, 156 Vt. 165, 591 A.2d 41, 49 (1991) (a vested right is a " 'right complete and consummated, and of such character that it cannot be divested without the consent of the person to whom it belongs, and fixed or established, and no longer open to controversy.' ") (quoting Black's Law Dictionary 1402 (5th ed. 1979)). On the other hand, it is also sometimes said that "[i]n determining whether a retroactive statute impairs or destroys vested rights, the most important inquiries are (1) whether the public interest is advanced or retarded, (2) whether the retroactive provision gives effect to or defeats the *bona fide* intentions or reasonable expectations of affected persons, and (3) whether the statute surprises persons who have long relied on a contrary state of the law." *Southwestern Bell Tel. Co. v. Public Util. Comm'n of Tex.*, 615 S.W.2d 947, 956–57 (Tex.Civ.App.1981); *accord Texas Water Rights Comm'n v. Wright*, 464 S.W.2d 642, 649 (Tex.1971); *see* 2 Singer § 41.05, at 366 (a fundamental consideration of fairness is that "settled expectations honestly arrived at with respect to substantial interests ought not be defeated"); Ray H. Green-

---

**15.** This definition of a retrospective act is called the "Story definition" because it was first announced in *Wheeler*, 22 F.Cas. at 767, by Associate Justice Joseph Story of the United States Supreme Court, then "traveling circuit" and sitting on a circuit court of the district of New Hampshire.

**16.** The plaintiffs have not raised on appeal the issue of whether the application of the Act by the Division attaches a new disability to them with respect to transactions or considerations already past. We therefore express no opinion on the issue.

**17.** *D.K.B., Manchester Envtl. Coalition,* and Cooley all employ the term legal or equitable title to the present or future "enforcement" of a demand, whereas *Lindheimer* and *Godfrey* employ the term legal or equitable title to the present or future "enjoyment" of a demand. We do not believe that it is the intent of any of these authorities to mean something different in this context by "enforcement" as opposed to "enjoyment," or vice versa.

blatt, *Judicial Limitations on Retroactive Civil Legislation*, 51 Nw.U.L.Rev. 540, 561 (1956) (courts should apply a balancing test that weighs public interest and statutory objectives against reasonable expectations and substantial reliance). Similarly, when applying the rule that a governmentally-issued permit can form the basis for a vested right if the permit holder takes steps in reliance on the permit, *Van Sickle*, 797 P.2d at 1271; *P–W Invs.*, 655 P.2d at 1371, some courts acknowledge that "[t]here is no fixed formula which measures the content of all the circumstances whereby a party is said to possess 'a vested right'; it is a term, rather, which sums up a judicial determination that the facts of the case render it inequitable that the State impede the individual from taking certain action." *Incorporated Village of Northport v. Guardian Fed. Sav. & Loan Assoc.*, 87 Misc.2d 344, 384 N.Y.S.2d 923, 928 (N.Y.Sup.Ct.1976); *accord Lefrak Forest Hills Corp. v. Galvin*, 40 A.D.2d 211, 338 N.Y.S.2d 932, 939 (1972), *aff'd*, 32 N.Y.2d 796, 345 N.Y.S.2d 547, 298 N.E.2d 685, *cert. denied*, 414 U.S. 1004, 94 S.Ct. 360, 38 L.Ed.2d 240; *cf. D.K.B.*, 843 P.2d at 1334 (Kirshbaum & Quinn, JJ., concurring) ("There are no bright line tests to determine what constitutes a vested right or when that right accrues.").

## B

Most relevant to the resolution of the vested rights issue in this case is *Board of County Commissioners of Gunnison County v. Buckley*, 121 Colo. 108, 117, 213 P.2d 608, 612 (1949), holding that those who received liquor licenses that expired annually under The Liquor Code of 1935, §§ 75–2–1 to –37, 4 C.R.S. (1953), did not have vested rights in the renewal of their licenses. *Accord City of Manitou Springs v. Walk*, 149 Colo. 43, 45, 367 P.2d 744, 745 (1961) ("let us make it clear that no licensee under the Fermented Malt Beverages Act ... has a vested right to renewal of a license").

In *Buckley*, the plaintiff operated a resort hotel about twenty-nine miles outside Gunnison, Colorado, and she had applied for, and received, a hotel and restaurant liquor license for her hotel for the years 1947 and 1948. In 1949, however, her application for a license for the hotel was denied, and she instituted an action against the Board of County Commissioners of Gunnison County alleging that the Board had without just or good cause, arbitrarily and capriciously refused to grant her license. The Board stipulated at trial that

the plaintiff is a fit, proper and qualified person to hold a resort and hotel license; ... that the improvements on the property are valuable ... that we are making no allegation and do not intend to dispute that the hotel has been run and the place operated in a legal manner; ... that at the meeting held to consider the application no protest [against granting the license] was filed. * * * We are standing squarely here before the Court on the authority of the board of county commissioners in their discretion, to reject a new application for a liquor license for the good of the inhabitants.

121 Colo. at 110–11, 213 P.2d at 609. It was further found that prior to considering the plaintiff's 1949 application, the Board had met and resolved in general to deny *every* application for a liquor license, and that the plaintiff's application had been denied partly pursuant to that resolution, and partly because the road to her resort was unpaved, winding, and dangerous and because the Board thought that young people at Western State College in Gunnison should not be subjected to the temptations afforded by drinking places in the rural areas of the county. *Id.* at 111–12, 213 P.2d at 612. We held that the Board had no authority to declare and effectuate a general public policy against the granting of any and all licenses, *id.* at 114, 213 P.2d at 611, but that it was within the Board's discretion to reject the plaintiff's license because of the road and near-by college, *id.* at 117, 213 P.2d at 612, even though the Board admitted that when the plaintiff was granted a license in 1947 and 1948, " '[her] place of business, the manner of conducting the business, the condition of the road and such matters ... [were] about the same. To practical intents and purposes

the physical conditions [were] the same.' " *Id.* at 111, 213 P.2d at 609. In particular, in response to the specific question:

> In considering an application for a liquor license filed in May, 1949, is the discretion of the licensing authority, in any manner affected by the fact that for the two preceding calendar years a license had been issued to the applicant for the same premises?

*id.* at 115, 213 P.2d at 611 (emphasis deleted), we held:

> The defendant board was not bound by any prior action of any licensing authority with relation to the facts pertaining to the issuance of any license for former years, but was called upon to exercise its own discretion as of the date of the new application. Conceivably the licensing authority passing upon the new application, in the exercise of its discretion, might with propriety reject an application which a former board, upon the same facts, had approved, and in so doing the board would not, of necessity, be guilty of an abuse of discretion, or an arbitrary and capricious exercise thereof. *There is no vested right in a licensee to continue in the liquor business beyond the expiration of the date of the license under which he operates. Any licensee who invests his time and substance in the liquor business* does so with full knowledge that he has no assurance that the desires of the neighborhood, or the requirements thereof, will remain constant, or that new members of boards possessing power to issue or renew a license will reach the same conclusions as their predecessors, and he *acts at his peril and assumes the risk that his license may not be granted or renewed.*

*Id.* at 116–17, 213 P.2d at 612 (emphasis added).

The situation of the plaintiffs before us is very similar to the situation of the plaintiff in *Buckley.* Like the plaintiff in *Buckley,* the plaintiffs' licenses expired annually and were renewed; like the plaintiff in *Buckley,* the plaintiffs' licenses were later not renewed despite the fact that nothing about their circumstances had changed.[18] In addition, the plaintiffs argue that a governmentally-issued permit can form the basis for a vested right if the permit holder takes steps in reliance on the permit, *see P-W Invs.,* 655 P.2d at 1371, and that the plaintiffs have substantially relied on the renewal of their licenses by committing their lives and their capital to building their businesses. Nevertheless, those who held liquor licenses that expired annually also committed their lives and their capital to building their businesses, and despite such reliance we held that they acted at their peril and assumed the risk that their licenses may not be renewed. *Buckley,* 121 Colo. at 117, 213 P.2d at 612.[19]

Nor can *Buckley* be distinguished on the ground that "under [The Liquor Code of 1935] the plaintiff [in *Buckley* ] had no status as an applicant for renewal of her license," *Buckley,* 121 Colo. at 116, 213

---

18. Strictly speaking, only Ficarra and Wilkins had their applications for renewal turned down despite the fact that nothing about their circumstances had changed. Grayson, on the other hand, was convicted of a felony on June 20, 1988, and the Division decided the following January not to renew his license. *See supra* notes 2–3 and accompanying text. Thus, although Grayson's license may have been renewed several times before June 20, 1988, Grayson's circumstances had significantly changed when the Division decided not to renew his license in January of 1989.

19. One commentator explains:

> In organized society every man holds all he possessés, and looks forward to all he hopes for, through the aid and under the protection of the laws; but as changes of circumstances and of public opinion, as well as other reasons affecting the public policy, are all the while calling for changes in the laws, and as these changes must influence more or less the value and stability of private possessions, and strengthen or destroy well-founded hopes, and as the power to make very many of them could not be disputed without denying the right of the political community to prosper and advance, it is obvious that many rights, privileges, and exemptions which usually pertain to ownership under a particular state of the law, and many reasonable expectations, cannot be regarded as vested rights in any legal sense.

2 Thomas M. Cooley, *Constitutional Limitations* 746–47 (8th ed. 1927) (footnote omitted).

P.2d at 612,[20] whereas the plaintiffs do have the status as applicants for renewal. On the contrary, in *Buckley* we specifically questioned whether a licensing board has less discretion in denying renewals than in denying original applications, *id.* at 116–17, 213 P.2d at 612, and held that any licensee who relies on his license has no assurance "that new members of boards possessing power to issue *or renew* a license will reach the same conclusions as their predecessors, and he acts at his peril and assumes the risk that his license may not be granted *or renewed." Id.* at 117, 213 P.2d at 612 (emphasis added); *cf. City of Manitou Springs*, 149 Colo. at 45, 367 P.2d at 745 (applicant who filed a timely application for renewal of his license under the Fermented Malt Beverages Act had no vested right to renewal of his license). Thus, it cannot be said that *Buckley* applies only to cases in which licensees fail to make timely applications for renewal.

## C

Without distinguishing their case from *Buckley*, the plaintiffs rely on two later United States Supreme Court cases, specifically, *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), to establish indirectly that they have vested rights under the Story definition because they have interests that are entitled to the constitutional protections of procedural due process. More specifically, the plaintiffs argue that (1) they have a property interest in the renewal of their licenses that is entitled to the protections of procedural due process, (2) property interests protected by procedural due process are vested rights under the Story definition, and therefore (3) their interest in the renewal of their licenses is a vested right whose

impairment is prohibited by our constitutional prohibition against retrospective legislation. We disagree, however, that the plaintiffs have a property interest in the renewal of their licenses that is protected by procedural due process.

*Roth* held that in order to be entitled to the protections of procedural due process, a person must establish that he has a protected liberty or property interest at stake, *Roth*, 408 U.S. at 569–70, 92 S.Ct. at 2705,[21] and that a person has a protected property interest at stake only if he has "a legitimate claim of entitlement to it" as opposed to "a unilateral expectation of it." *Id.* at 577, 92 S.Ct. at 2709. Roth, who was an untenured assistant professor at a state university, had no legitimate claim of entitlement in having his contract of employment renewed when his contract specified that the term of his employment would end at the conclusion of the academic year. *Id.* at 566–78, 92 S.Ct. at 2703–10. On the other hand, Sindermann may have had a legitimate claim of entitlement in having his contract of employment renewed. *Sindermann*, 408 U.S. at 602–03, 92 S.Ct. at 2700. Sindermann was a professor at a state junior college. Like Roth he had no formal contractual tenure agreement with his state employer. Unlike Roth, however, Sindermann alleged that less formal written rules and mutually explicit understandings in his college community established that he was *de facto* tenured despite his being employed under a series of one-year contracts. *Id.* at 599–601, 92 S.Ct. at 2698–99. The Court held that such rules and understandings, if proven to exist, would give Sindermann a "legitimate claim of entitlement to continued employment absent 'sufficient cause [to fire him],' " *id.* at 602–03, 92 S.Ct. at 2700, and thus the right to the protections of procedural due process

20. The Liquor Code of 1935 provided that "[a]ll licenses shall expire December thirty-first of the year for which issued *and application for the renewal of licenses shall be made on or before the first day of December of each year." § 75-2-9*, 4 C.R.S. (1953) (emphasis added). The plaintiff in *Buckley* failed to submit her 1949 application until May of 1949, and that is why "under the statute the plaintiff had no status as an

applicant for renewal." *Buckley*, 121 Colo. at 116, 213 P.2d at 612.

21. The due process clause as applied to the states provides that "[n]o state shall ... deprive any person of life, liberty or property without due process of law." *U.S. Const.* amend. XIV, § 1.

(e.g., a hearing) during which the sufficiency of the cause for his termination would be tested. *Id.* at 603, 92 S.Ct. at 2700–01.

In the case before us, it is undisputed that the plaintiffs were entitled to a hearing before the nonrenewal of their licenses became effective. This right to a hearing, however, is statutorily based,[22] and the fact that the General Assembly has created a right to such a hearing does not mean that the plaintiffs are independently entitled to it as a matter of constitutional law. In order to establish that they have a property interest in the renewal of their licenses that is entitled to the protections of procedural due process, the plaintiffs would have to show that they had a legitimate claim of entitlement in the renewal of their licenses, based perhaps on the sort of informal rules and mutually explicit understandings alleged in *Sindermann.* The plaintiffs have alleged no such understandings or rules, nor have they suggested that there are any other bases in state law for concluding that they have a property interest in the renewal of their licenses. *Cf. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709 ("[p]roperty interests ... are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law"). Therefore, the substantial reliance placed by the plaintiffs upon the renewal of their licenses, by constitutional standards, amounts only to "a unilateral expectation," *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709, of

renewal. *Cf. Leis v. Flynt,* 439 U.S. 438, 442–43, 99 S.Ct. 698, 700, 58 L.Ed.2d 717 (1979) (per curiam) (out-of-state lawyer who may have had a reasonable expectation that he would be permitted to appear *pro hac vice* had no property interest in so appearing that was entitled to the protections of procedural due process); *Bishop v. Wood,* 426 U.S. 341, 343, 347, 96 S.Ct. 2074, 2077, 2079, 48 L.Ed.2d 684 (1976) (city police officer who was classified by city ordinance as a "permanent employee" had no property interest in continued employment that was entitled to the protections of procedural due process because under state law the officer held his position at the will and pleasure of the city); *Colorado Soc'y of Community & Institutional Psychologists, Inc. v. Lamm,* 741 P.2d 707, 712–14 (Colo.1987) (psychologists who practiced under licensing exemptions later repealed had no legitimate claim of entitlement protected by procedural due process in continuing to practice their profession under the repealed exemptions); *Kibler v. State,* 718 P.2d 531, 537–38 (Colo.1986) (nurse whose license was suspended and then revoked had no constitutionally protected interest in reinstatement); *Department of Health v. Donahue,* 690 P.2d 243, 249 (Colo.1984) (absent statute or regulation that confers a right to a hearing, state probationary employee lacked legally protected interest in continued employment sufficient to create an entitlement to a due process hearing prior to discharge).[23] In

---

**22.** *See* § 12–7–106(2), 5A C.R.S. (1991) ("If the [D]ivision ... refuses to renew any ... license, the aggrieved person shall be given an opportunity for a hearing subject to judicial review as provided in article 4 of title 24, C.R.S."); § 24–4–104(7), 10A C.R.S. (1988) ("In any case in which the licensee has made timely and sufficient application for the renewal of a license ..., the existing license shall not expire until such application has been finally acted upon by the agency, and, if the application is denied, it shall be treated in all respects as a revocation."); § 24–4–104(6), 10A C.R.S. (1988) ("No previously issued license shall be revoked ... until after hearing as provided in section 24–4–105.").

**23.** Nor are the plaintiffs' unilateral expectations regarding the renewal of their licenses transformed into constitutionally protected property interests because, in some cases, they might

have to wait many years before they qualify again for a professional bail bondsman license. *See Soc'y of Psychologists,* 741 P.2d 707 (even though newly adopted licensing regulations would require certain previously exempted practicing psychologists to complete a doctoral degree and to have at least two years' postdoctoral experience practicing psychology in order again to practice psychology in Colorado, such previously exempted psychologists had no constitutionally protected due process property interest in practicing psychology). Indeed, two analogous cases from other states do not identify as significant the fact that new requirements retroactively applied might prevent persons from ever practicing again their previous professions. *See Burrage v. New Hampshire Police Standards & Training Council,* 127 N.H. 742, 506 A.2d 342 (1986) (act effective June 5, 1983, that required elected police officers successfully

short, the plaintiffs have not shown that they have a property interest in the renewal of their licenses that is entitled to the protections of procedural due process.[24] Consequently, their argument that they have vested rights under the Story definition because they have interests protected by procedural due process fails.[25]

## D

Public policy considerations further contribute to the conclusion that the bail bond licensing statute does not constitute retrospective legislation. As noted in part III A, some authorities suggest that in addressing retrospectivity issues courts should apply a balancing test that weighs the public interest and statutory objectives against the reasonable expectations of parties challenging the retroactive effect of legislation. We too have previously acknowledged the importance of public interest considerations in retrospectivity analysis by stating that "vested rights do not accrue to thwart the reasonable exercise of the police power for the public good," *Lakewood Pawnbrokers, Inc. v. City of Lakewood*, 183 Colo. 370, 377, 517 P.2d 834, 838 (1974), and that "[t]he constitutional ban of retrospective operation does not prevent a city from enacting and enforcing ordinances to protect the health and safety of the community," *Van Sickle*, 797 P.2d at 1271.

The bail bond business is intimately involved in the process of determining who in the criminal justice system will be released pending trial and who will remain incarcerated. *See Stephens v. Bonding Ass'n of Kentucky*, 538 S.W.2d 580, 582–83 (Ky.1976); *Kahn v. McCormack*, 99 Wis.2d 382, 299 N.W.2d 279, 282 (1980). Professional bail bondsmen must be prepared to handle valuable collateral, *see* §§ 12-7-105, -107(3), 5A C.R.S. (1991), and to encourage within the bounds of the law the appearance at trial of persons accused (and sometimes previously convicted) of serious crimes. The importance to the public of the safe and honest performance of these activities can hardly be overemphasized, and thus the bail bond business is without question a matter of substantial public concern subject to reasonable regulation under the police power of the State. *Herbertson v. Department of Ins.*, 173 Colo. 327, 331, 478 P.2d 668, 670 (1970); *cf. Stephens*, 538 S.W.2d 580 (valid exercise of the police power for state to abolish entirely the professional bail bondsman system); *Kahn*, 299 N.W.2d 279 (valid exercise of the police power for state to eliminate sureties for profit for criminal bail bonds).

In order for the General Assembly effectively to regulate a profession, it must have the ability to meet the needs of changing times by revising requirements for the issuance of licenses,[26] and to update require-

to complete a new training program was not an unconstitutional retrospective law as applied to officer elected in March of 1983 who had already twice failed to complete the program); *State v. Project Principle, Inc.*, 724 S.W.2d 387 (Tex.1987) (act requiring previously certified public school teachers successfully to complete a new written examination in order to retain their teaching certificates was not an unconstitutional retroactive law).

24. In arguing that they did have such an interest, the plaintiffs may have confused their situation with the situation of those who face revocation or suspension of their governmentally-issued licenses prior to the expiration dates of those licenses. *See Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971) ("Once licenses are issued, ... their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases

the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment."); *Mr. Lucky's, Inc. v. Dolan*, 197 Colo. 195, 197, 591 P.2d 1021, 1022 (1979) ("a *present* liquor license, like any business license, is a property right which is entitled to due process protection") (emphasis added).

25. We, therefore, need not reach the issue of whether property interests protected by procedural due process are vested rights under the Story definition, and we express no opinion on it.

26. *Cf. Burrage*, 506 A.2d 342 (act effective June 5, 1983, that required elected police officers successfully to complete a new training program was not an unconstitutional retrospective law as applied to officer elected in March of 1983); *Project Principle*, 724 S.W.2d 387 (act requiring previously certified public school teachers successfully to complete a new written

ments in the light of additional knowledge and experience gained over time. One way in which the General Assembly may have sought in the area of the bail bond business to ensure such flexibility is by providing from the start that all professional bail bondsman licenses expire annually on January 31. *See* ch. 163, sec. 1, § 72–22–2(4), 1963 Colo.Sess.Laws 584, 585.

■ Despite the strong public interest involved, the power of the General Assembly to revise and tighten the standards for issuing professional bail bondsman licenses is not absolute. New standards chosen by the General Assembly must bear a rational relationship to a legitimate governmental interest, *People v. Zinn*, 843 P.2d 1351, 1353 (Colo.1993), and persons who are excluded from the profession may be excluded only for valid reasons, *Schware v. Board of Bar Examiners*, 353 U.S. 232, 239 n. 5, 77 S.Ct. 752, 756 n. 5, 1 L.Ed.2d 796 (1957). As we said in upholding the application of newly adopted licensing regulations to previously exempted practicing psychologists:

> [T]he fact that such exemptions were enacted at one time does not compel the conclusion that a licensing act is invalid if the exemptions are eliminated. The mere failure of a governmental regulation to allow all possible and reasonable exceptions to its application is not sufficient to render the regulation unconstitutional. The General Assembly has broad discretion to fashion a licensing scheme that, in its view, protects the public health, safety, welfare, and morals, and we do not sit as a "super legislature" to weigh the propriety of that legislation. Because we may not substitute our judgment for that of the General Assembly as to the wisdom of the licensing scheme, the plaintiff's disagreement with the soundness of the law has no relevance to its constitutionality, as long as the legislation bears a rational relationship to a legitimate end of government.

examination in order to retain their teaching certificates was not an unconstitutional retro-

*Soc'y of Psychologists*, 741 P.2d at 712 (citations omitted).

In light of the strong public interest involved, and the position of trust held by professional bail bondsmen, the General Assembly could rationally conclude that those who have not served sentences upon felony convictions within the last ten years are more likely safely and honestly to carry out the duties of a professional bail bondsman. It is equally within the province of the General Assembly to conclude that the public interest at stake in the operation of the bail bond system overrides any private expectation at stake in the renewal of a professional bail bondsman license.

### E

To summarize, the plaintiffs have not established that they have any title, legal or equitable, to the renewal of their licenses. They have not distinguished their case from *Buckley*, a case which holds that there was no vested right to renewal of liquor licenses that expired annually. They have not established a property interest in the renewal of their licenses that is entitled to the protections of procedural due process. Finally, the weighing of the public policy considerations reflected in the Act against the reasonable expectations of the plaintiffs militates against a conclusion that the Act has been retrospectively applied. We therefore hold that the plaintiffs had no vested rights that were impaired by the nonrenewal of their licenses and that the nonrenewal of their licenses is not a retrospective application of the Act.

### IV

For the foregoing reasons, we affirm the judgment of the district court.

SCOTT, J., does not participate.