(121 App. Div. 301.)

# RIGGS et al. v. RYAN.

(Supreme Court, Appellate Division, Fourth Department. Sept. 25, 1907.)

**1. CONTRACTS—LEGALITY OF OBJECT—PUBLIC POLICY.**

Any contract is against public policy, and void, which provides for the sale by an individual of the right, given him with others by legislative enactment, to give or withhold his consent to any project affecting a public interest, and where the giving or withholding of such consent may become the basis of governmental action.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 510.]

**2. SAME.**

An agreement to reimburse another for a sum that he might pay the owner of a building occupied exclusively as a dwelling to secure the consent required by Liquor Tax Law, Laws 1896, p. 60, c. 112, § 17, subd. 8, providing that, to obtain a certificate authorizing the sale of liquor on premises in a residential district, the consent of two-thirds of the owners of buildings occupied exclusively as dwellings within a radius of 200 feet of the premises on which the liquor is to be sold must be secured, is void as against public policy and unenforceable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 510.]

Robson, J., dissenting.

Appeal from Trial Term, Jefferson County.

Action for rent by Charles D. Riggs and another against Stephen R. Ryan. From a judgment for plaintiffs and an order denying his motion for a new trial, defendant appeals. Judgment and order affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

N. F. Breen, for appellant.

George S. McCartin, for respondents.

McLENNAN, P. J. The plaintiffs executed a lease of the premises in question which entitled the defendant to occupy the same for the term commencing October 1, 1904, and ending October 30, 1910, for a monthly rental of $50, payable monthly. Said lease contained the provisions:

"But it is understood that in case a license to sell liquor cannot be obtained under the law that this lease shall terminate and become void. It is understood that said premises are to be used for a saloon and to have a license under the liquor tax law of the state of New York, provided the same can be obtained."

It is practically conceded that it was the understanding of the parties, and intended to be expressed by such provision, that, if a license to sell liquor upon such premises could not be obtained, the lease should not become effective, and that, if such license was obtained and thereafter revoked without the fault or procurement of one of the parties, the other could not insist upon the continuing validity of such lease. A license was obtained, authorizing the sale of liquors upon the premises in question, and the defendant entered into possession thereof under the terms of such lease on the 6th day of October, 1904, and occupied the same until the 1st day of May, 1905, a period of 6⅘ months, at which time the liquor tax certificate which

had theretofore been issued to the defendant was revoked, and it is conceded by all parties that the liability of the defendant under such lease then terminated. For the time which he had so occupied the premises the defendant became indebted to the plaintiffs in the sum of $340. Concededly $300 of such amount has been paid by the defendant, which would leave a balance due to plaintiffs of $40 because of defendant's occupancy of the premises under said lease, unless the alleged counterclaim of the defendant to which attention will hereafter be called should be allowed. After the liquor tax certificate had been revoked, and the right to sell intoxicating liquors on the premises had ceased, the evidence on the part of the plaintiffs tends to show that the parties entered into a verbal agreement, by which the defendant was to continue to occupy the same as a poolroom, to sell soft drinks, so-called, etc., and to pay a reasonable rental therefor, that, under such verbal agreement, the defendant did occupy the premises for a period of 10 months, and that the rental of the same under such conditions was reasonably worth $30 per month. The defendant denied that any such agreement had been made, or that the relation of landlord and tenant existed between him and the plaintiffs after the cancellation of the liquor tax certificate as aforesaid, and also put in issue the rental value of the premises under such circumstances.

Under a charge which was eminently fair and to which no exception was taken, the learned county judge submitted the question to the jury, and they found practically that the verbal arrangement was made as testified to by the plaintiffs, that the fair rental value of the premises during such 10 months was $15 per month, and awarded to the plaintiffs $150 for the rental of the premises for such period, adding thereto the $40 of the rental remaining unpaid for the time which he had occupied the premises under the lease. It cannot be said that the verdict of the jury upon that issue was contrary to or against the weight of the evidence.

The only remaining question to be determined upon this appeal is whether or not the alleged counterclaim of the defendant should have been allowed in reduction of the verdict, which involves the question whether the agreement under which it is alleged to have accrued is against public policy, and therefore not enforceable. The premises in question were located in a residential portion of the city of Watertown, and so that it was necessary under subdivision 8, § 17, Excise Law, Laws 1896, p. 60, c. 112, in order to obtain a liquor tax certificate authorizing the sale of liquor upon said premises, that the owner or owners of two-thirds of the buildings occupied exclusively as dwellings within a radius of 200 feet thereof should consent in writing to the issuance of such certificate. Both parties to this action were alike anxious that the necessary number of consents should be obtained. The defendant alleges that the plaintiffs authorized him to pay to one Bell, one of such owners within the 200 feet radius, $50 for the purpose of inducing him, said Bell, to consent that a liquor tax certificate be issued to the defendant and which would authorize him to sell liquor upon plaintiffs' premises; that the plaintiffs agreed that, in case he paid such $50 to Bell and thus obtained

Bell's consent, the plaintiffs would reimburse him for such payment; that, pursuant to such agreement, the defendant paid to Bell the $50, and obtained his consent, which, it is supposed, made the requisite two-thirds. The defendant seeks to counterclaim in this action the $50 so paid to Bell by him. The plaintiffs urge that such agreement, if made, was against public policy and void. The county judge so held as matter of law, and refused to submit to the jury the question as to whether or not such agreement was made as claimed by the defendant, to which ruling an exception was duly taken. We fully concur in the conclusion reached by the learned county judge that the agreement, if made as alleged by the defendant, is void, and therefore may not be made the basis of a counterclaim in defendant's favor.

It was clearly the intent of the Legislature, in passing the provision of the excise law to which attention has been called, to serve a public interest by preventing the sale of liquor in a residential part of a city, unless the owners of two-thirds of the buildings occupied exclusively as residences within the radius named in the statute, in good faith and in the exercise of their respective judgments, deemed it for the best interests of such community that liquor should be sold therein. It is inconceivable that the Legislature simply intended by such enactment to give to such property owners an opportunity to demand a monetary consideration for their respective consents, to sell the same to the highest bidder, and then to enforce the payment of the bid so made in an action at law. If such an intention can be imputed to the Legislature, it is readily seen that an owner of a single building occupied exclusively as a residence, however inconsiderable its value, might, if his were the one additional consent necessary, find himself the owner of a very valuable asset, all depending upon how much the would-be saloon keeper was willing to pay for a single consent, or how much those who were opposed to the establishment of a saloon in the locality might be willing to pay for the withholding of such consent. The Legislature did not intend by the provision of the statute adverted to to provide a means by which consents may be purchased, upon which important public interests may depend, affecting not only the seller of a particular consent, but all others similarly situated, and who, perchance, have no inclination or have had no opportunity to sell their consents. Such provision contained in this and other statutes of like import was enacted in order that the judgment of a certain class of citizens may be obtained in order to determine what the action of the state should be in a particular case, and not to provide a means to the unscrupulous for a sale to the highest bidder of their judgment in that regard. Any contract is against public policy, and therefore void, which provides for the sale by an individual of the right, given to him with others by legislative enactment, to give or withhold his consent to any project affecting a public interest, and where the giving or withholding of such consents may become the basis of governmental action. In the case at bar it was a matter of public interest whether or not liquors should be sold in the locality in question; and whether or not such sale should be authorized under the laws of the state of New York depended solely upon the giving or withholding of the consents of the

owners of buildings occupied exclusively as dwellings situate within the territory mentioned in the statute, so that the contract in question falls directly within the condemnation of the rule as above stated. So far as we have been able to discover, the validity of an agreement precisely like the one here involved has not been passed upon by the courts of this state, but many similar agreements and which upon principle are not distinguishable from the one at bar have been declared void by the courts of this and other states because against public policy.

Dean v. Clark, 80 Hun, 80, 30 N. Y. Supp. 45, was a case brought to recover upon an indemnity bond under seal, given to the plaintiff, and which provided, in substance, that, if the plaintiff would sign a consent that the town in which he resided and in which he was the owner of property subject to taxation might bond itself in aid of a certain railroad (the consent of a certain per cent. of taxpayers in said town being necessary in order to authorize such bonding under an act of the Legislature), the defendant agreed to indemnify and save the plaintiff harmless against all taxes which might be assessed against his property as a result of such bonding. The court held unanimously that such agreement was void, against public policy, because it had a tendency to influence the plaintiff's action, and hence injuriously affect public interests. The court said (page 85 of 80 Hun, page 48 of 30 N. Y. Supp.):

"The question submitted to the taxpayers was one of great public importance to the town. Plaintiff's action in the matter affected not only himself, but other taxpayers. It affected those citizens who refused to make any request to the commissioners, and also others who did consent to the bonding of the town, but were induced to do so by the action of the plaintiff. We think public policy required the unbiased and uninfluenced judgment of the several taxpayers on the question submitted to them pursuant to the statute. The action of the taxpayers in determining whether the $100,000 should be loaned might be deemed similar to an act of legislation. The Legislature, instead of passing on the question of the loan, submitted it to the taxpayers of the town, a majority of whom voted in its favor. By the bond of indemnity, the obligors agreed to pay plaintiff the amount he should be taxed in consequence of the proposed loan. Such a bond naturally and necessarily affected his judgment as to the propriety and necessity of the loan. It was like a bribe to him with a view of affecting his action as a citizen on a matter affecting the public interest of the town. The question submitted to the taxpayers was whether the taxable property of the town should be mortgaged, so to speak, to secure a loan of $100,000 for the purpose of aiding the construction of the Lebanon Springs Railroad. Plaintiff, as a citizen, was called upon to vote upon the proposed measure, which, as we have said, was of great importance. The agreement of the obligors to indemnify him from the payment of taxes to result in consequence of his vote and that of the other taxpayers was very much like an undertaking to pay him $1,000 for his vote. By such a procedure a minority of the taxpayers of any town could have induced a majority to vote for the bonding of the town under the act, when the judgment of the majority of such taxpayers, if uninfluenced, was opposed to the project. We think public policy required that the vote of each taxpayer to the town of New Lebanon on the proposal to bond it for the benefit of the Lebanon Springs Railroad should be uninfluenced, and that hence the promise of the defendants to indemnify the plaintiff against taxes resulting from his vote was not enforceable."

We have quoted the language of the court thus at length because we consider it most admirably states the law applicable to such cases

under such circumstances, and because there is hardly a sentence which does not apply with equal force in condemnation of the agreement which is sought to be enforced in the case at bar.

Story in his work on Equity Jurisprudence (volume 1, § 259), in considering the question of constructive fraud, says:

"Some of the cases under this head are principally so treated, because they are contrary to some general public policy, or to some fixed artificial policy of the law. Others, again, rather grow out of some special confidential or fiduciary relation between all the parties, or between some of them, which is watched with especial jealousy and solicitude, because it affords the power and means of taking undue advantage or of exercising undue influence over others."

Some of the many decisions decided by the courts of sister states may be of interest. In Smith v. Applegate, 23 N. J. Law, 352, the holding is stated in the headnote as follows:

"(1) A promissory note given by the applicants for a public road to a caveator against such road, in consideration of the caveator withdrawing his opposition to the road, and permitting the return to be recorded, is void, being founded on an illegal consideration. (2) A contract on the part of the caveator to withdraw his opposition to the laying out of a highway is against the policy of the law, and therefore void."

In Noyes v. Day, 14 Vt. 384, it was held that a forbearance to bid at public auction, for the sale of the support of the paupers of a town, is a good consideration for a note given for such forbearance. But such a transaction is contrary to public policy, and the note is therefore void. In Jacobs v. Tobiason, 65 Iowa, 245, 21 N. W. 590, 54 Am. Rep. 9, it was held that an agreement to abandon the prosecution of preceedings for the establishment of a public highway in consideration of money to be paid therefor was void. In Maguire v. Smrock, 42 Ind. 1, 13 Am. Rep. 353, it was held that an agreement guarantying to pay a sum of money to certain persons, provided they will petition the common council of a city for street improvements, was void. In Howard v. Baltimore First Independent Church, 18 Md. 451, it was held that an agreement was void whereby, for a direct or indirect consideration, some of the owners of abutting land were induced to sign a petition for grading and paving a street, where an ordinance required such petition to be made in good faith and all the subscribers to bear their proportion of the burden. In St. Louis v. Meier, 77 Mo. 13, it was held that an agreement between a landowner and commissioners appointed to open a street, by which the former consents to the opening of the street provided no benefits shall be assessed against him, is void. These and a large number of other similar agreements which have been held to be void by the courts of different states are referred to in 9 Enc. of Law and Procedure, p. 485; but such decisions only lend emphasis to the proposition that any contract is void which contemplates the sale of the assent or the withholding of consent by an individual, the exercise of which right is given by the Legislature, and which may be the basis of or a prerequisite to governmental action. By provisions such as are here involved, the Legislature of the state seeks to ascertain by an honest expression of the people of a certain locality whether or not certain other provisions of

the statute shall have effect and be applicable to them. As before suggested, it is inconceivable that such expression may legitimately be made the subject of sale and which, notwithstanding, must control the action of the state in that regard.

There ought not to be any dispute as to the scope and purpose of the alleged agreement which is the basis of the counterclaim sought to be interposed by the defendant. The state of New York, in order to determine whether or not a liquor tax certificate should be issued to the defendant authorizing him to sell liquor in the locality in question, asked the advice of the owners of buildings occupied exclusively as residences within a certain radius in such locality as to whether or not liquor should be permitted to be sold therein. Can such advice, as represented by the consents of such owners, be bought, and a contract for such purchase be enforced in our courts? The proposition is abhorrent to all sense of justice, and, as it seems to me, is not supported by authority. We wish to be understood as holding most emphatically that the agreement under which the defendant seeks to substantiate his counterclaim is void because against public policy, and that all similar agreements which have for their purpose the influencing of individual opinion as to whether governmental action should or should not be taken in a particular instance are void for the same reason, and are therefore not enforceable in our courts.

It follows that the judgment and order appealed from should be affirmed, with costs.

Judgment and order affirmed with costs. All concur, except ROB-SON, J., who dissents.