No. 12,163.

Menzel v. Niles Company.

Decided October 7, 1929.

Mr. Ira C. Rothgerber, Mr. Walter M. Appel, for plaintiff in error.

Mr. George H. Tralles, Mr. Barnwell S. Stuart, for defendant in error.

*In Department.*

Mr. Justice Campbell delivered the opinion of the court.

E. N. Bates at one time owned lots in block 9 fronting east on Steele street, and lots across the street in block 8 facing west, the property being situate in Colfax Avenue Subdivision in the city of Denver. These lots are in a restricted district created by city ordinance which made it unlawful to build an apartment house therein for more than four families unless a majority of the owners of property facing on both sides of the street in the same block approved of its erection, which ap-

proval must have their written signatures and be filed with the city building inspector at the time the applicant for a permit for the erection of the building demands the same. Bates then wanted to build such an apartment house for more than four families on his lots in block 8 at the corner of Steele street and Seventeenth avenue, and thereupon made written application to the building inspector for a building permit, but did not receive or have or produce to the inspector the required signatures of property owners on both sides of Steele street approving of the erection of the building. To the contrary, these objecting property owners filed with the building inspector their protests and objections to the granting of the permit. Bates then signed and placed on record in the office of the county recorder a written instrument to the effect that in consideration of the withdrawal by the objecting property owners, he, Bates, agreed that the proposed apartment house was to be of a certain designated character and that the surrounding grounds were to be suitably parked and provided with trees, and every effort made to make the structure pleasing in appearance and quality, and agreed to do certain other things which were acceptable to the objectors, whereupon the property owners who had heretofore objected withdrew their protests and consented to the issuance of the permit, and Bates, obtaining the permit, built the apartment house. The particular restrictive covenant in this writing by Bates, and now relied upon by the defendant Menzel, is that on the property, now owned by plaintiff, remote grantee of Bates, only such buildings as are therein described shall be erected. Thereafter the plaintiff in this action, the Niles Company, acquired title to the lots theretofore owned by Bates on the west side of Steele street in block 9 which were on the opposite side of the street from the apartment house. The Niles Company, after its acquisition of title, brought the pending action seeking, among other things, an order of court as to whether this recorded in-

strument of Bates was valid or void, and, if void, for a decree quieting title to the plaintiff in the lots which it owns by its cancellation. It seems that one or both of the parties deem that the complaint in this action was filed under our Declaratory Judgment Act, but the complaint, in all substantial respects, is one to quiet title to plaintiff's lots and to nullify the effect of the recorded written instrument.

As we read the record the trial court deemed the action to be one under our Declaratory Judgment Act. Whether it is an action under this act or the ordinary Code action to quiet title is not important. The decree of the district court was justified by the evidence under the principles of law which the trial court applied thereto. Of the 29 defendants who were named in the complaint, only one of them, Menzel, is here complaining, and his principal objection seems to be based upon the proposition that the plaintiff company, even if it be correct in its contention, that the instrument is contrary to public policy, is in pari delicto and ought not to be permitted to have its title quieted. He asserts that the question is not strictly one of estoppel, but it is whether the plaintiff, although its grantor entered into and received the benefits of an illegal contract, is entitled to come into court and ask to be relieved from the effects thereof. We do not think that the question involved here, as the defendant asserts, is purely a private matter. In one sense it is private, nevertheless the interest of the public at large is involved. The consideration of this contract we think the trial court properly held to be invalid and contrary to public policy, and that the plaintiff company is not bound thereby.

The controlling facts in this case are not disputed. They clearly disclose that not only was the contract void in its inception, as against public policy, but that the parties are not in pari delicto. The defendant in this action himself was not a party to the illegal transaction and had nothing to do with the application for the build-

ing permit or the making or recording of the instrument by Bates. The plaintiff here is not seeking the enforcement of an illegal contract. It is the owner in fee of the legal title to the property in this block. The act of its predecessor in title, Bates, is not, in the circumstances of this case, binding upon plaintiff as his remote grantee.

The plaintiff company acquired this property by deed valid on its face, and its title could not be made illegal or invalid by the existence of a collateral contract with reference to the building of an apartment house which was made between Bates and other property owners if the same was, as we think it was, invalid as against public policy.

A contract which is contrary to public policy is void because it *is contrary* to public policy, and neither party to the contract is estopped from questioning it merely because the other party has parted with a property right or rendered service in reliance upon it. *Seitz v. Michel,* 148 Minn. 80, 181 N. W. 102, 12 A. L. R. 1060. In passing it may be said that the parties concede that in *Willison v. Cooke,* 54 Colo. 320, 130 Pac. 828, 44 L. R. A. 1030, we declared unconstitutional and void the very ordinance which is involved in this action. It was held there that the consent of a majority of property owners was not necessary to secure a permit for the erection of a store building on city lots in Denver.

Bates could have erected his apartment house without securing the withdrawal of the protests of other property owners, which in this case was the sole consideration for the contract which he executed and caused to be filed in the recorder's office. In one sense this contract had no consideration whatsoever, either void or legal. Bates covenanted that in no event, or at any time, shall there be constructed or erected on the designated lots any building other than the ones specified in that written instrument, which had for its only alleged consideration the agreement by the other owners of property within the restricted district to withdraw their

protests and to give their consent to the erection by Bates of an apartment house on the lots he owned. This consideration of the other property owners was and is illegal and contrary to public policy and, therefore, is not enforceable as against the remote grantees of Bates. For a court to sanction such an illegal contract would be equivalent to, and indeed would be, sanctioning the barter and sale of a statutory right of the ones signing the instrument to object to a threatened act.

A valuable case on this point is *Riggs v. Ryan,* 121 App. Div. 301, 106 N. Y. Supp. 39. The court there said that any contract is against public policy and void, which provides for the sale by an individual of the right, given him with others by legislative enactment, to give or withhold his consent to any project affecting a public interest, and where the giving or withholding of such consent may become the basis of governmental action. See also *Noyes v. Day,* 14 Vt. 384.

In *Jacobs v. Tobiason,* 65 Iowa 245, 21 N. W. 590, the court was considering proceedings for the establishment of a public highway. In that case a contract had been entered into whereby one of the parties agreed to abandon the proceedings. The court held that such an agreement was contrary to public policy and void.

In *Smith v. Applegate,* 23 N. J. L. 352, it was held that a promissory note given by the applicants for a public road to a caveator against such road, in consideration of his withdrawing his opposition thereto and permitting certain things to be done, is void since it is founded on an illegal consideration.

It is clear that this so-called Bates contract is invalid because the consideration therefor by the interested property owners is against public policy. But it is said that the parties here are in pari delicto and therefore, the courts may not grant relief to one at the instance of the other.

In 13 C. J., p. 497, §441, it is said, even if parties are in pari delicto, nevertheless where public policy re-

quires the intervention of a court it may grant relief in a suit of one against the other. See also 13 C. J., p. 499, §443. In such circumstances as are present in this record the guilt of parties, or one of them, is not considered as equal to the higher right of the public interest which is paramount. Matters relating to restricted districts are of public interest and concern; otherwise such legislation as this would be invalid. Therefore, the doctrine, in pari delicto, should not be allowed to interfere with the adjudication as to the validity or invalidity of the contract or agreement in such a case as is before us. Finding no error in this record, the judgment of the district court is affirmed.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE ADAMS and MR. JUSTICE ALTER concur.