Arnold MEYERSTEIN, in his capacity as trustee of the Meyerstein Trust, Plaintiff–Appellant,

v.

CITY OF ASPEN, a home rule municipality; Aspen/Pitkin County Housing Authority, a multi-jurisdictional housing authority; and Music Associates of Aspen, d/b/a Aspen Music Festival and School, Defendants–Appellees.

No. 09CA1651.

Colorado Court of Appeals, Div. I.

March 17, 2011.

As Modified on Denial of Rehearing May 19, 2011.

Klein, Coté & Edwards, LLC, Herbert S. Klein, Lance R. Coté, Aspen, Colorado, for Plaintiff–Appellant.

John P. Worcester, City Attorney, Aspen, Colorado, for Defendant–Appellee City of Aspen.

Austin, Peirce & Smith, P.C., Thomas Fenton Smith, Aspen, Colorado, for Defendant–Appellee Aspen/Pitkin County Housing Authority.

Thomas & Genshaft, P.C., Peter W. Thomas, Aspen, Colorado, for Defendant–Appellee Music Associates of Aspen.

Opinion by Judge GABRIEL.

Plaintiff, Arnold Meyerstein, as trustee of the Meyerstein Trust, appeals the district court's summary judgment for defendants, City of Aspen (City), Aspen/Pitkin County Housing Authority (Authority), and Music Associates of Aspen (MAA), on his claims for declaratory relief and for review pursuant to C.R.C.P. 106(a)(4). Meyerstein also appeals the district court's dismissal on statute of limitations grounds of both his takings and 42 U.S.C. § 1983 claims. We conclude that the need for further factual development precludes summary judgment on Meyerstein's claim that the deed restriction at issue contains an illegal rent control provision. We further conclude that the district court partially erred in holding, as a matter of law, that Meyerstein's cause of action under 42 U.S.C. § 1983 was time barred. Accordingly, we reverse the portions of the district court's judgments relating to those claims and remand for further proceedings. We affirm the judgments in all other respects.

## I. Background

In 1997, Meyerstein's predecessor in interest applied to Pitkin County for approval of a planned unit development (PUD) called Aspen Highlands Village (the property). As part of the PUD approval process, deed restrictions were placed on the property requiring, among other things, that certain units be reserved for affordable housing. As pertinent here, the deed restrictions included limits on the rents that could be charged for the reserved units and required the owner of the property to qualify certain tenants for those units through the Authority. Another deed restriction (the MAA provision) concerned certain "seasonal dorm units." This provision stated:

> These units may be occupied by [MAA] music students and/or faculty in the summer months of June, July, August, and winter seasonal employees from October through April. The seasonal beds will be occupied in the off-season months of May and September as demand warrants. The winter seasonal employees shall be qualified under [Authority] Guidelines and procedures prior to occupancy. Employment is the only requirement for the seasonal dorm units. The [property owner] has the right to select a qualified tenant of his or her choice. Summer occupancy does not have to be approved by the [Authority].

Meyerstein purchased the property on September 15, 2005. On January 25, 2008, the Authority issued a notice of violation (NOV) to him, alleging that he failed (1) to rent the allotted units to MAA during the previous two summers or make them available to MAA for the upcoming summer (all parties referred to the rights described in the MAA provision as belonging to MAA, as opposed to its students and faculty, and we will employ that same convention), (2) to have winter seasonal employees and long-term tenants qualified prior to occupancy, and (3) to provide the Authority with copies of leases, as required under the deed restrictions. The NOV informed Meyerstein that he could request a hearing before the Authority board.

Meyerstein responded to the NOV by, among other things, challenging the Authority's interpretation of the MAA provision. In Meyerstein's view, he was permitted to rent to MAA at his option, but was not required to do so. In addition, Meyerstein asserted that the Authority board lacked jurisdiction to interpret or determine the enforceability of the deed restrictions. Nonetheless, in or-

der to avoid litigation, he indicated a willingness to discuss these issues and requested a hearing to do so.

The Authority board subsequently held a hearing to review Meyerstein's objections to the NOV. Meyerstein was represented by counsel at this hearing, and counsel questioned witnesses and presented arguments on Meyerstein's behalf.

After the hearing, the board issued Resolution No. 2008–04, "constituting its findings of fact and conclusions of law based upon the evidence." The board concluded that it had the authority to hear Meyerstein's appeal of the NOV, that the requirements of procedural due process had been met, and that MAA had a right, at its option, to occupy the designated rooms during the summer months.

Several weeks later, Meyerstein filed a complaint in the district court. In his complaint, he sought a declaration that (1) the rent controls imposed by the deed restrictions were void and unenforceable; (2) the word "may" as used in the MAA provision was permissive, not mandatory; and (3) the Authority lacked the authority to conduct the hearing and to interpret the MAA provision as it did, and otherwise denied him due process. Meyerstein further asserted a claim under 42 U.S.C. § 1983, alleging a violation of his right to the exclusive and other lawful use of the property, and a claim alleging an unconstitutional taking. Finally, in the alternative, Meyerstein timely sought review, pursuant to C.R.C.P. 106(a)(4), of the Authority board's decision.

The Authority moved to dismiss Meyerstein's section 1983 and takings claims on the basis of the applicable statutes of limitation. The district court granted this motion. The parties then cross-moved for summary judgment on Meyerstein's remaining claims. The court granted defendants' motion and awarded attorney fees and costs to the Authority and MAA pursuant to the terms of the deed restrictions.

Meyerstein now appeals.

## II. Standard of Review

We review de novo an order granting or denying a motion for summary judgment. *Vail/Arrowhead, Inc. v. Dist. Court,* 954 P.2d 608, 611 (Colo.1998). Summary judgment is proper only when the pleadings and supporting documents show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Jenkins v. Panama Canal Ry. Co.,* 208 P.3d 238, 240 (Colo.2009). A party opposing summary judgment "may not rest upon mere allegations or denials in its pleadings, but must provide specific facts demonstrating the existence of a genuine issue for trial." *Sender v. Powell,* 902 P.2d 947, 950 (Colo.App.1995); *accord* C.R.C.P. 56(e).

We likewise review de novo a district court's order granting a motion to dismiss on statute of limitations grounds. *See SMLL, L.L.C. v. Peak Nat'l Bank,* 111 P.3d 563, 564 (Colo.App.2005). Such a motion is properly granted if the "bare allegations" of a plaintiff's complaint reveal the untimeliness of its claims and the plaintiff fails to meet his or her burden of establishing otherwise. *See id.*

## III. Rent Controls

Meyerstein contends that the district court erred in granting summary judgment for defendants on his claim that the deed restriction limiting the amount of rent he was permitted to charge violated the then-existing version of Colorado's anti-rent control statute. For the reasons set forth below, we conclude that section 38–12–301, C.R.S.2010, as amended, applies here, and we hold that the need for further factual development precludes summary judgment on this claim.

### A. C.R.C.P. 106(a)(4) or C.R.C.P. 57

As a preliminary matter, we must address defendants' contentions that (1) Meyerstein's rent control challenge accrued at the time the PUD was approved, (2) he was required to assert that challenge under C.R.C.P. 106(a)(4) within thirty days of the PUD approval, and (3) his current claim is therefore time barred. These contentions essentially require us to decide whether

Meyerstein's rent control challenge had to have been brought under C.R.C.P. 106(a)(4), as defendants contend, or whether the claim is properly cognizable under C.R.C.P. 57, as Meyerstein asserts. The district court agreed with defendants but recognized that the issue was close and thus proceeded to address the merits. We, too, recognize that this issue is a difficult one. On the facts presented here, however, where the Authority threatened action to enforce the rent control provisions but did not commence an administrative proceeding, and where Meyerstein contends that the rent control provisions in his deed restrictions cannot legally be enforced, we conclude that Meyerstein may properly pursue his rent control challenge under C.R.C.P. 57.

■ C.R.C.P. 106(a)(4) provides a mechanism by which parties may challenge the quasi-judicial decisions of a governmental body, officer, or lower tribunal. C.R.C.P. 57 permits parties to petition a court for a declaration of their rights under, among other things, deeds, statutes, and contracts, "whether or not further relief is or could be claimed." A declaratory judgment, however, "must be based upon an actual controversy and not be merely a request for an advisory opinion." See Beacom v. Bd. of Cnty. Comm'rs, 657 P.2d 440, 447 (Colo.1983). It is available to afford relief from uncertainty regarding rights, status, and other legal relations. Lakewood Fire Prot. Dist. v. City of Lakewood, 710 P.2d 1124, 1126 (Colo.App. 1985). Accordingly, C.R.C.P. 57 is to be liberally construed and administered. Id.

■ "A claim under C.R.C.P. 57 is not precluded by the possibility of C.R.C.P. 106(a)(4) review of administrative agency action where C.R.C.P. 106(a)(4) review may be ineffective in addressing the issues raised by the petitioner." Denver Ctr. for the Performing Arts v. Briggs, 696 P.2d 299, 305 (Colo.1985). For example, if a party did not receive prior notice of a rezoning hearing and did not participate in that proceeding, C.R.C.P. 106(a)(4) review may not be an effective remedy, and declaratory relief under C.R.C.P. 57 may be appropriate. Norby v. City of Boulder, 195 Colo. 231, 236, 577 P.2d 277, 280 (1978); see also Regennitter v. Fowl-

er, 132 Colo. 489, 494, 290 P.2d 223, 225 (1955) (where plaintiff had no notice of a hearing on a zoning variance and had not been heard by the board of adjustment, C.R.C.P. 106 did not provide the exclusive remedy). Moreover, we note that in cases in which C.R.C.P. 106(a)(4) review is appropriate for certain issues but not others, our supreme court has observed that it may be proper for a party to pursue simultaneous claims under both C.R.C.P. 57 and C.R.C.P. 106. Denver Ctr. for the Performing Arts, 696 P.2d at 305.

Applying these principles here, we conclude that Meyerstein may properly pursue his rent control challenge under C.R.C.P. 57. At the beginning of the hearing on Meyerstein's appeal of his NOV, the Authority's qualifications manager indicated that one issue before the board was that the rents that Meyerstein was charging were more than the amounts allowed under the deed restrictions. After Meyerstein's property manager noted that the NOV did not address the amount of rent being charged, Meyerstein's counsel indicated that he was not prepared to address that issue. The Authority's counsel then stated that he did not "get ... into that either," although he added that the Authority would come back to that question if necessary.

In our view, this dialogue made clear the Authority's intent to enforce the rent control provisions and thus created a sufficient actual controversy for purposes of C.R.C.P. 57. Moreover, because of the procedural posture, the board did not address the rent control issue at the hearing, and, thus, Meyerstein could not have sought C.R.C.P. 106(a)(4) review of that issue, because there was no administrative decision for a court to review. Finally, we conclude that Meyerstein was not required to wait until the Authority acted on its threat to enforce the rent control provision before filing a declaratory judgment action. Requiring him to do so would have left him in a position of legal uncertainty, which is one of the circumstances that C.R.C.P. 57 is designed to address. See Lakewood Fire Prot. Dist., 710 P.2d at 1126 (the purpose of C.R.C.P. 57 is remedial, to settle and afford relief from uncertainty and insecurity with

respect to rights, status, and other legal relations, and therefore it should be liberally construed).

In reaching this conclusion, we reject defendants' argument that Meyerstein is barred from challenging the rent control provisions now because he failed to challenge the original Pitkin County resolution within thirty days of its adoption. The Authority commenced the current enforcement action, and it clearly asserted its intent to enforce the rent control provisions contained in Meyerstein's deed restrictions against him. Having thus initiated this controversy, defendants cannot be heard to argue that Meyerstein is precluded from seeking a declaration of his rights and obligations.

Moreover, we do not view Meyerstein's position as a challenge to Pitkin County's exercise of discretion in adopting the original PUD. Rather, he is asserting that enforcement of the rent control provisions against him, which the Authority has now threatened, would be in violation of existing law and, thus, contrary to public policy. In our view, in the narrow circumstances presented here, Meyerstein may properly assert that position now. *Cf. Menzel v. Niles Co.*, 86 Colo. 320, 324, 281 P. 364, 365 (1929) ("A contract which is contrary to public policy is void because it *is contrary* to public policy, and neither party to the contract is estopped from questioning it merely because the other party has parted with a property right or rendered service in reliance upon it."); *Harding v. Heritage Health Prods. Co.*, 98 P.3d 945, 949 (Colo.App.2004) (holding that a party may not rely on the doctrines of waiver, estoppel, ratification, or laches, or on the statute of limitations, to enforce an illegal or void agreement).

Accordingly, we conclude that under the circumstances of this case, Meyerstein is entitled to pursue his rent control challenge by way of a declaratory judgment action under C.R.C.P. 57. We turn, then, to the merits of that challenge.

### B. Merits of Meyerstein's Rent Control Challenge

At the time of the district court's rulings in this case, the anti-rent control statute provided:

> The general assembly finds and declares that the imposition of rent control on private residential housing units is a matter of statewide concern; therefore, no county or municipality may enact any ordinance or resolution which would control rents on private residential property. This section is not intended to impair the right of any state agency, county, or municipality to manage and control any property in which it has an interest through a housing authority or similar agency.

Ch. 437, sec. 1, § 38–12–301, 1981 Colo. Sess. Laws 1818.

Since this litigation began, however, the legislature has amended the statute. It now reads, in pertinent part:

> (1) The general assembly finds and declares that the imposition of rent control on private residential housing units is a matter of statewide concern; therefore, no county or municipality may enact any ordinance or resolution that would control rent on either private residential property or a private residential housing unit.

> (2) For purposes of subsection (1) of this section, an ordinance or resolution that would control rent on either private residential property or a private residential housing unit shall not include:

> (a) A voluntary agreement between a county or municipality and a permit applicant or property owner to limit rent on the property or unit or that is otherwise designed to provide affordable housing stock; or

> (b) The placement on the title to the unit of a deed restriction that limits rent on the property or unit or that is otherwise designed to provide affordable housing stock pursuant to a voluntary agreement between a county or municipality and a permit applicant or property owner to place the deed restriction on the title.

> . . . .

> (4) Notwithstanding any other provision of this section, a county or municipality may not deny an application for a development permit as defined in section 29–20–103(1), C.R.S., because an applicant for such a

permit declines to enter into an agreement to limit rent on either private residential property or a private residential housing unit.

(5) This section is not intended to impair the right of any state agency, county, or municipality to manage and control any property in which it has an interest through a housing authority or similar agency.

§ 38–12–301, C.R.S.2010.

### 1. Government Interest Exception

■ The parties dispute whether the amendments to the statute apply retroactively here. Before we address that question, however, we first address the Authority's contention that the deed restriction at issue falls within the statutory exception excluding from the prohibitions on rent control the right of a governmental entity to manage and control property in which it has an interest. *See* § 38–12–301(5). As noted above, this exception was contained in both the pre- and post-amendment versions of the statute. Accordingly, if it applies, then we need not consider the question of retroactivity.

The Authority contends, and the district court agreed, that the exception for properties in which governmental entities have an interest applies because the deed restriction at issue is a covenant that runs with the land and such a covenant is an interest in land. The exception, however, does not merely focus on a governmental entity's interest in property. Rather, it excludes from rent control prohibitions the right of a governmental entity *to manage and control* property in which it has an interest. Here, we fail to perceive how enforcement of the anti-rent control statute would impair any right of the Authority to manage and control Meyerstein's property, which is a necessary predicate to applicability of the statutory exception. "To manage" means "to control and direct." *Webster's Third New International Dictionary* 1372 (2002). "To control," as applicable here, means, "to exercise restraining or directing influence over." *Id.* at 496. Here, the imposition, or even the enforcement, of a rent control restriction does not constitute the management and control of

another's property, as those terms are ordinarily understood. Accordingly, we conclude that the statutory exception is inapplicable.

### 2. Retroactivity and Retrospectivity

In light of our foregoing determination, we must next consider whether the amended statute applies retroactively here, because the amendments are potentially dispositive. We note that defendants sought leave to address this question in supplemental briefing, and both parties submitted proposed supplemental briefs. We grant defendants' motion for leave to file supplemental briefs, accept the supplemental briefs filed by the parties, and advise the parties that we have considered these briefs in reaching our determination here.

■ "Legislation is applied prospectively when it operates on transactions that occur after its effective date, and retroactively when it operates on transactions that have already occurred or rights and obligations that existed before its effective date." *Ficarra v. Dep't of Regulatory Agencies,* 849 P.2d 6, 11 (Colo.1993). "A statute is presumed to be prospective in its operation." § 2–4–202, C.R.S.2010; *People v. Summers,* 208 P.3d 251, 256 (Colo.2009); *see also Acad. of Charter Schs. v. Adams Cnty. Sch. Dist. No. 12,* 32 P.3d 456, 466 (Colo.2001) ("There is a statutory and common-law presumption that legislation is prospective unless intent to the contrary is shown."). That presumption may be overcome, however, if the statute clearly reveals the General Assembly's intent that it be applied retroactively. *See Summers,* 208 P.3d at 256; *Acad. of Charter Schs.,* 32 P.3d at 466.

■ An expression of legislative intent that a statute should be applied retroactively, however, does not end our inquiry. Our constitution prohibits the General Assembly from passing laws that are "retrospective" in their operation. Colo. Const. art. II, § 11. "A law is unconstitutionally retrospective if it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Abromeit v.*

*Denver Career Serv. Bd.,* 140 P.3d 44, 51 (Colo.App.2005).

█ The retroactive application of a statute is not in and of itself unconstitutional. *Pollock v. Highlands Ranch Cmty. Ass'n,* 140 P.3d 351, 354 (Colo.App.2006). Thus, when a statute effects a change that is not substantive, but, for example, is procedural or remedial in nature, the retroactive application of that statute does not violate the constitutional prohibition against retrospective legislation. *Abromeit,* 140 P.3d at 51; *see also Loredo v. Denver Pub. Sch. Dist. No. 1,* 827 P.2d 633, 633 (Colo.App.1992) (procedural changes in statutes apply to existing causes of action unless statutes express contrary intent).

█ A statutory change is substantive when it creates, eliminates, or modifies vested rights or liabilities. *People v. D.K.B.,* 843 P.2d 1326, 1331 (Colo.1993). "A right is vested only when it is not dependent upon the common law or the statute under which it was acquired for its assertion, but has an independent existence." *Abromeit,* 140 P.3d at 51.

> [A] vested right "must be something more than a mere expectation based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand, or a legal exemption from a demand made by another."

*Ficarra,* 849 P.2d at 16 (quoting *People ex rel. Eitel v. Lindheimer,* 371 Ill. 367, 21 N.E.2d 318, 321 (1939)).

█ In determining whether a retroactive statute impairs or destroys vested rights, courts consider (1) whether the public interest is advanced or retarded; (2) whether the retroactive provision gives effect to or defeats the bona fide intentions or reasonable expectations of the affected party; and (3) whether the statute surprises those who have relied on a contrary state of the law. *Id.*

█ In this case, the General Assembly has made clear its desire to have the amended statute apply retroactively: "The provisions of this act shall apply to agreements entered into before, on, or after the applica-ble effective date of this act." Ch. 208, sec. 2(2), 2010 Colo. Sess. Laws 907. Accordingly, we must consider whether this provision is unconstitutionally retrospective in its operation. We conclude for several reasons that it is not and, thus, that it permissibly applies retroactively here.

█ First, the amendments merely clarified, and did not change, existing law.

> Amendments to a statute either clarify the law or change it, and there exists a presumption that, by amending the law, the legislature intends to change it. This presumption can be rebutted, however, by a showing that the legislature only meant to clarify an ambiguity in the statute by amending it. If an amendment clarifies the law, the law then remains unchanged. Accordingly, to determine whether an amendment changed the law or merely clarified it, we look to the legislative history surrounding an amendment, we consider the plain language used by the General Assembly, and we determine whether the provision was ambiguous before it was amended.

*Acad. of Charter Schs.,* 32 P.3d at 464 (citations omitted). Each of these factors, which we discuss in reverse order, demonstrates that the amendments clarified the law.

Specifically, as reflected by the supreme court's interpretation of the pre-amended statute in *Town of Telluride v. Lot Thirty–Four Venture, L.L.C.,* 3 P.3d 30, 35–36 (Colo. 2000), there was ambiguity in that version of the statute, particularly as to whether the statute could be read to extend beyond just ordinances and resolutions to deed restrictions. Thus, the court held that, although the town's ordinance contained several options for satisfying an affordable housing requirement, the options for constructing new housing or imposing deed restrictions on existing housing constituted rent control. *Id.*

Moreover, the plain language of the amended statute reflects a legislative intent to clarify the existing statute. Thus, section 38–12–301(2), on its face, sets forth what "an ordinance or resolution that would control rent" does not include, thereby clarifying the proper scope of the statute.

Finally, in looking to the legislative history of the amended statute, "we accord substantial weight to the sponsors' statements concerning a bill's purpose." *People v. Miller*, 97 P.3d 171, 174 (Colo.App.2003). Here, Senator Boyd, who was the Senate sponsor of the bill that amended the statute, made clear that the amendments were intended to clarify that the statute's rent control restriction applied only to ordinances and resolutions that would control rent, and not to voluntary agreements between or deed restrictions agreed to by the government and a permit applicant or property owner, as arguably suggested by the supreme court's decision in *Telluride*, 3 P.3d at 35–36. Thus, Senator Boyd stated, "The [*Telluride* ] decision has been interpreted in different ways by different municipal and county attorneys, and we want to clarify." Senate Second Reading on H.B. 10–1017, 67th Gen. Assem., 2d Sess. (Apr. 1, 2010); *see also* Bill Summary, Preamended H.B. 10–1017, 67th Gen. Assem., 2d Sess. ("[T]he bill also clarifies that nothing in the rent control statute shall prohibit or restrict the right of a property owner and a state agency, county, municipality, or housing authority (public entity) from voluntarily entering into and enforcing an agreement that controls rent on a private residential housing unit, whether the agreement is entered into before, on, or after the effective date of the bill.").

For these reasons, we conclude that the amended statute sought to clarify, not change, existing law and, thus, is remedial in nature. *See, e.g., Allstate Ins. Co. v. Faulhaber*, 157 Mich.App. 164, 403 N.W.2d 527, 529 (1987) ("A statute is considered remedial or procedural if it is designed to correct an existing oversight in the law or redress an existing grievance."). For this reason alone, the statute's retroactive application would not violate the prohibition against retrospective legislation. *Abromeit*, 140 P.3d at 51.

Second, the statutory change does not deprive Meyerstein of a vested right. As noted above, a right is not vested when it is dependent on a statute under which it was acquired. *Id.* It must be more than a mere expectation based on the anticipated continuance of the existing law. *Ficarra*, 849 P.2d at 16. Here, at best, Meyerstein can assert only that he had rights under the prior statute that have now been altered. This, however, is insufficient to establish the requisite change in any allegedly vested right. *See id.*

Moreover, the undisputed facts show that Meyerstein's position has not changed. Specifically, Meyerstein purchased property that was subject to a deed restriction limiting tenants and rents, and application of the new rent control statute would not change that fact. To the contrary, application of the statute would preserve the status quo.

For these reasons, we conclude that the amended anti-rent control statute may permissibly be applied retroactively here.

### 3. Application

The question thus becomes whether the deed restriction capping the amount of rent that Meyerstein may charge violates the statute. As noted above, section 38–12–301(2) expressly allows for the imposition of deed restrictions that limit rents on property pursuant to a voluntary agreement between a governmental entity and a property owner. Thus, if the restriction at issue here resulted from a voluntary agreement between Meyerstein's predecessor in interest and the Authority, then that restriction would fall squarely within the statutory exception, and Meyerstein would not be entitled to the declaratory relief that he seeks.

Because the parties have not yet had the opportunity to present evidence on this voluntariness question, we cannot decide that issue as a matter of law. Accordingly, we conclude that a remand is necessary to allow the district court to consider it in the first instance.

### IV. The MAA Provision

Meyerstein next asserts that the Authority and the district court each erred in their interpretations of the MAA provision. Contrary to their interpretation, he contends that the provision gives him the option to rent to MAA. We are not persuaded.

## A. The Board's Authority

As an initial matter, we must address Meyerstein's contentions that (1) the board lacked the authority to hold a hearing to review the NOV, (2) he was denied due process at the hearing because the board generally and one board member in particular were biased, and (3) the board could not properly interpret the MAA provision because it was a party to the agreement containing that provision. We disagree with the first two contentions and need not decide the third.

With respect to Meyerstein's contention that the board lacked the authority to conduct the hearing, we note that the Authority was created pursuant to sections 29–1–201 to –204.5, C.R.S.2010, and the Third Amended and Restated Intergovernmental Agreement between the City and Pitkin County. Under that Agreement, the Authority was charged with the responsibility to "enforce all aspects of the affordable housing program, including, but not necessarily limited to, deed restrictions, guidelines, and qualifications." The Authority was further directed to establish "a system to hear appeals from the interpretation or implementation of the Affordable Housing Guidelines and issue final administrative determinations on such appeals." Moreover, agencies possess implied and incidental powers to do all that is necessary to effectuate their express duties. *Hawes v. Colo. Div. of Ins.*, 65 P.3d 1008, 1017 (Colo.2003).

In addition, as both the United States and Colorado Supreme Courts have held, procedural due process is not violated merely because a single agency investigates, charges, and then adjudicates a claim. *See Withrow v. Larkin*, 421 U.S. 35, 55–58, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (State Examining Board could properly investigate physician and subsequently hold a hearing to determine if his license would be suspended; the combination of investigative and adjudicative functions did not, without more, constitute a due process violation); *North Colo. Med. Center, Inc. v. Nicholas*, 27 P.3d 828, 844 (Colo.2001) ("[T]here is no logical or legal inconsistency in a certain mixing of investigative and adjudicative roles in administrative proceedings.").

For these reasons, we conclude that the board could properly hear Meyerstein's appeal of the NOV.

We likewise reject Meyerstein's assertions that he was denied due process because (1) the board as a whole was biased, given that its mission is to promote low income housing, and (2) an individual board member was biased, as evidenced by certain public statements that he had made.

"Quasi-judicial proceedings must be conducted in accordance with procedural due process. And, fundamental fairness is the cornerstone of due process." *Scott v. City of Englewood*, 672 P.2d 225, 227 (Colo. App.1983) (citations omitted). The mere fact that the subject matter of the hearing also touches on the areas of public policy for which the agency is responsible, however, does not deny a participant procedural due process. *See Fed. Trade Comm'n v. Cement Inst.*, 333 U.S. 683, 700–02, 68 S.Ct. 793, 92 L.Ed. 1010 (1948). Were administrative agencies to be disqualified from conducting adjudicative hearings in their areas of expertise, no agencies could ever exercise quasi-judicial functions because, under Meyerstein's proposed standard, they would always be biased. *Cf. id.* at 702, 68 S.Ct. 793 ("If the Commission's opinions expressed in congressionally required reports would bar its members from acting in unfair trade proceedings, it would appear that opinions expressed in [an initial] unfair trade proceeding would similarly disqualify them from ever passing on another. Thus, experience acquired from their work as commissioners would be a handicap instead of an advantage. Such was not the intendment of Congress.") (citation omitted).

As a division of this court has observed, "There is a presumption of integrity, honesty, and impartiality in favor of those serving in quasi-judicial capacities. And, the challenger of a quasi-judicial decision has the burden of rebutting this presumption of impartiality." *Scott*, 672 P.2d at 227 (citation omitted). An adjudicative hearing like that at issue here violates a party's right to pro-

cedural due process only if the above-described presumption of integrity and honesty is overcome by a showing that the decision-maker has a conflict of interest. *Id.* "An adjudicatory hearing will be held to have been conducted impartially in the absence of a personal, financial, or official stake in the decision evidencing a conflict of interest on the part of a decision-maker." *Id.* at 228. The taking of a public stance on a policy issue related to the upcoming hearing, however, "does not, in the absence of a showing of bias, disqualify the decision-maker." *Id.*

 Applying these principles here, we perceive nothing in the record supporting Meyerstein's argument that the members of the board, as a group, were biased against him. Nor are we persuaded that the individual board member's statements evince a disqualifying conflict of interest. *See id.* The board member purportedly said, "I am a firm believer in people living up to their contractual obligations and if they don't, since we live in the West, hang 'em high.... Whoever developed this property received benefits and they should uphold the deed restrictions on it." The board member was speaking about a different action and about deed restrictions and contractual obligations generally, as opposed to Meyerstein's restrictions and actions. We perceive nothing in this statement establishing this board member's bias against Meyerstein.

As to Meyerstein's contention that the board was not authorized to interpret the MAA provision because it was a party to the agreement containing that provision, we need not decide this question. Whether Meyerstein is correct and this claim was properly presented to the district court pursuant to C.R.C.P. 57, or whether the Authority is correct and we must review this question under C.R.C.P. 106(a)(4), the result is the same. Specifically, as we will now discuss, we conclude, as a matter of law, that the MAA provision requires Meyerstein to rent to MAA if it chooses to use the rooms.

B. Interpretation of the MAA Provision

 We review questions of contract interpretation de novo. *Ad Two, Inc. v. City & Cnty. of Denver*, 9 P.3d 373, 376 (Colo.

2000). Well-established principles of contract law guide our review, with our primary goal being to determine and give effect to the intent of the parties. *Id.* We ascertain the parties' intent "primarily from the language of the instrument itself. In ascertaining whether certain provisions of an agreement are ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed." *Id.* (citation omitted). When the written contract is complete and free from ambiguity, we will find it to express the intentions of the parties and enforce it according to its plain language. *Id.* "Extraneous evidence is only admissible to prove intent where there is an ambiguity in the terms of the contract." *Id.*

> Terms used in a contract are ambiguous when they are susceptible to more than one reasonable interpretation. Absent such ambiguity, we will not look beyond the four corners of the agreement to determine the meaning intended by the parties. The mere fact that the parties may have different opinions regarding the interpretation of the contract does not itself create an ambiguity in the contract.

*Id.* at 376–77 (citations omitted).

 Here, the parties offer two conflicting, but reasonable, interpretations of the MAA provision. Meyerstein argues that, in the sentence, "These units may be occupied by [MAA] music students and/or faculty in the summer months of June, July, August, and winter seasonal employees from October through April," the word "may" is permissive and gives him the option to rent to MAA. He points to other provisions in the deed restrictions to support this point. For example, the same paragraph containing the above-quoted provision states, "The Declarant or Owner has the right to select a qualified tenant of his or her choice." This sentence, Meyerstein suggests, would be rendered meaningless if we were to interpret the word "may" as requiring him to rent to MAA. Conversely, he argues, his interpretation gives meaning to all of the contractual terms because, in his view, "may" simply allows him to rent to MAA students or faculty who would not other-

wise qualify for affordable housing units because of their financial resources.

The Authority, in contrast, argues that the word "may" gives *MAA* the option to occupy the dorm units at issue. The Authority suggests that this reading does not render meaningless the later provision giving Meyerstein the right to select his own tenants. Rather, the Authority contends that provision merely confirms Meyerstein's right to select from among qualified tenants those of his own choice during winter and off-season months. In addition, the Authority argues that the word "may" was intended to benefit MAA by allowing it to rent and pay for rooms only when it needed them.

As the parties ably demonstrate, the language at issue is susceptible of more than one reasonable interpretation. Accordingly, we agree with the district court that the word "may" as used here is ambiguous, and, thus, we may look to extrinsic evidence to determine the parties' intent. *Id.* at 376.

The extrinsic evidence in the record includes the following:

- Internal Authority memoranda discussing the developer's proposal to allow MAA students to occupy the dorm rooms during the summer months;

- A statement by a representative of the developer at an Authority meeting that the units "will be occupied by Aspen Ski Company employees and Aspen Highlands Village employees during the winter months and the MAA during the summer months";

- An Amended Planned Unit Development Guide, stating, "The dorm units will be occupied by [MAA] students and employees in the summer";

- The recorded, final draft of the Aspen Highlands Village development plan, including Pitkin County Resolution 97–167, which stated, "Priority for the use of the proposed dormitory units shall be given to employees of the project or the Aspen Skiing Company during the fall, winter and spring. In the summer season use priority will be for [MAA] students, employees and/or teaching staff"; and

- Testimony of an Aspen Music Festival director stating that MAA publicly supported the proposed Aspen Highlands Village PUD because the developer was proposing to give MAA a right of first refusal to use the dorm room beds. The director further stated that MAA and the developer carefully considered the use of the word "may," as opposed to "shall," in this context, and used the word "may" so that, if MAA did not rent the rooms, the owner could rent them to others.

The foregoing evidence strongly supports the Authority's interpretation of the MAA provision, and Meyerstein points us to no evidence to the contrary. Accordingly, we conclude, as a matter of law, that "may be occupied," as used in the MAA provision, was intended to give MAA the right to occupy the rooms at its option.

■ Notwithstanding the foregoing, Meyerstein asserts that even if the term "may," as used in the MAA provision, gave MAA the option to rent the rooms, the provision and the board resolution approving the PUD (Resolution) that authorized that provision constitute special legislation, in violation of article V, section 25 of the Colorado Constitution (the special legislation clause). We are not persuaded.

## V. Meyerstein's Section 1983 and Takings Claims

Finally, Meyerstein contends that the district court erred in dismissing his section 1983 and takings claims on statute of limitations grounds. We conclude that the district court correctly dismissed the takings claim, but we are unable to conclude, at the motion to dismiss stage, that all of Meyerstein's section 1983 claim is barred by the applicable statute of limitations.

### A. Legal Standard

The parties do not dispute that a two-year limitations period applies to both claims. *See Blake v. Dickason,* 997 F.2d 749, 750–51 (10th Cir.1993) (applying Colorado's two-year residual statute of limitations to a section 1983 claim); *Bad Boys of Cripple Creek Mining Co. v. City of Cripple Creek,* 996 P.2d

792, 795–96 (Colo.App.2000) (holding that a two-year statute of limitations applies to inverse condemnation claims). Nor do the parties dispute that a section 1983 claim accrues when the plaintiff possesses sufficient facts about the harm done to him or her such that he or she would have discovered his or her cause of action through reasonable inquiry, *see Brooks v. City of Winston–Salem*, 85 F.3d 178, 181 (4th Cir.1996), and that takings claims accrue when the taking action occurs, *Alliance of Descendants of Tex. Land Grants v. United States*, 37 F.3d 1478, 1481 (Fed.Cir. 1994); *accord* § 13–80–108(1), C.R.S.2010 (stating that a claim for injury to property accrues "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence").

### B. Takings Claim

■■■ Meyerstein's takings claim asserts that the deed restrictions' requirement that he rent to nonqualified students and faculty of the MAA constitutes a taking of his property without a legitimate public purpose, in violation of the United States and Colorado Constitutions. On its face, Meyerstein's complaint alleges that his predecessor in interest placed the restriction at issue in the deed on December 12, 2001. Although Meyerstein's takings claim arguably accrued on that date, his claim certainly accrued no later than September 15, 2005, when he purchased the property with notice of the restriction and its effect. Thus, because any takings claim that Meyerstein may have had accrued more than two years before he filed his complaint, any such claim is time barred.

In an effort to avoid this time-bar, Meyerstein asserts that the continuing tort doctrine should apply, and alternatively, that no statute of limitations should apply because he asserts a violation of public policy. We are not persuaded.

■■■ The continuing tort doctrine has only been applied in limited circumstances, including in cases involving torts to property, environmental law, employment discrimination law, antitrust law, and criminal law. *See Hoery v. United States*, 64 P.3d 214, 220 (Colo.2003) ("Colorado law recognizes the concepts of continuing trespass and nuisance

for those property invasions where a defendant fails to stop or remove continuing, harmful physical conditions that are wrongfully placed on a plaintiff's land."); *see also* Elizabeth Ann Coleman, *In re* Hoery v. United States: *Compensating Homeowners for Loss of Property Value Due to Toxic Pollution Under the Continuing Tort Doctrine*, 16 Vill. Envtl. L.J. 35, 46 n. 78 (2005) ("The continuing tort doctrine is invoked in a variety of legal arenas, including environmental law, employment discrimination law, antitrust law and criminal law."). Meyerstein, however, cites no pertinent authority applying the doctrine to constitutional claims such as those alleged here, and we have seen none. In particular, we are not persuaded that the facts of this case are akin to a continuing physical trespass, as Meyerstein contends. Thus, we decline to extend the continuing tort doctrine to those claims.

Similarly, even assuming that no statute of limitations may apply to a claim based on a violation of public policy, we fail to see how defendants' requirement that Meyerstein rent to allegedly non-qualified students and faculty of MAA implicates the public policy behind section 38–12–301's prohibition against a local government's enacting rent controls.

For these reasons, we conclude that the district court properly dismissed Meyerstein's takings claim.

### C. Section 1983 Claim

Meyerstein's section 1983 claim alleges that defendants violated his right to the exclusive use and enjoyment of his property by (1) imposing the allegedly unlawful deed restrictions on his property, (2) issuing the NOV, and (3) allegedly interfering with his contract with the St. Regis Hotel. The district court concluded that all of these claims were time-barred because they accrued, at the latest, when Meyerstein purchased the property. We agree in part.

■■■ Although a statute of limitations defense generally should not be raised on a motion to dismiss, *CAMAS Colo., Inc. v. Bd. of Cnty. Comm'rs*, 36 P.3d 135, 139 (Colo. App.2001), such a defense may be considered

on a motion to dismiss when the bare allegations of the complaint reveal that the action was not brought within the required statutory period, *SMLL, L.L.C.*, 111 P.3d at 564. We look, then, to see whether we can determine from the face of Meyerstein's complaint if his section 1983 claim is time barred.

 Assuming, without deciding, that Meyerstein's assertions regarding the imposition of the rent control language in his deed restrictions and the issuance of the NOV could support cognizable claims for relief under section 1983, we agree with the district court that any cause of action based on these premises accrued, at the latest, on the date on which Meyerstein purchased the property. At that time, he knew about the restriction in his deed limiting his ability to rent the property to a tenant of his choice. Accordingly, his time to assert a claim based on that restriction began to run no later than his date of purchase. Moreover, we do not agree that Meyerstein can rely on the issuance of the NOV to restart his time for asserting a challenge to a deed restriction of which he was aware years before. Accordingly, we agree with the district court that any section 1983 action based on these facts is time barred.

 Meyerstein's assertion regarding the St. Regis Hotel, however, is different. In this claim, Meyerstein alleges that Authority employees interfered with his contract negotiations with the St. Regis Hotel after the Authority had issued its decision on his appeal of the NOV. On its face, then, Meyerstein is complaining about conduct that first occurred on or about March 19, 2008. Moreover, this conduct is not the type of conduct that naturally or directly arose from the deed restriction. Although it is unclear to us that this alleged conduct suffices to state a viable section 1983 claim, the parties have not briefed, and the district court did not address, that issue, and we will not do so for the first time on appeal. *See Robinson*, 179 P.3d at 1008.

Accordingly, taking Meyerstein's allegations as true, as we must at the dismissal stage of this litigation, *see Hemmann Mgmt. Servs. v. Mediacell, Inc.*, 176 P.3d 856, 858 (Colo.App.2007), we cannot say that, as a

matter of law, the portion of Meyerstein's section 1983 claim relating to the Authority's conduct with regard to the St. Regis Hotel was time barred. Thus, we conclude that the district court erred in dismissing this aspect of Meyerstein's section 1983 claim based on the statute of limitations.

## VI. Appellate Attorney Fees

Defendants have requested an award of appellate attorney fees pursuant to that portion of the deed restrictions entitling a prevailing party to such fees. In light of our foregoing determinations, defendants' request is denied.

## VII. Conclusion

For these reasons, the judgments are reversed as to Meyerstein's request for a declaratory judgment that the rent control provision violates the anti-rent control statute and as to that portion of his section 1983 claim concerning the St. Regis Hotel contract, and the case is remanded for further proceedings on those claims consistent with this opinion. The judgments are affirmed in all other respects.

Judge TAUBMAN and Judge CARPARELLI concur.